143 F.3d 1178
 98 Cal. Daily Op. Serv. 3309, 98 Daily Journal
D.A.R. 4572
Eddie Willie TAYLOR; Michael F.X. Hogan, Plaintiffs-Appellees,
v.
UNITED STATES of America, Intervenor-Appellant,
and
State of Arizona; Terry Stewart, Director of the Arizona
Department of Corrections, et al., Defendants-Appellants.
 Nos. 97-16069, 97-16071.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 9, 1998.
Decided May 4, 1998.
 
 Withdrawn by 158 F.3d 1049
 Darrin J. Delange, Assistant Attorney General, Phoenix, Arizona, for the defendants-appellants.
 Randall S. Papetti, Lewis and Roca LLP, Phoenix, Arizona, for the plaintiffs-appellees.
 Robert M. Loeb, United States Department of Justice, Civil Division, Washington, District of Columbia, for the intervenor-appellant.
 Appeals from the United States District Court for the District of Arizona; Robert C. Broomfield, District Judge, Presiding. D.C. Nos. CV-72-00021-RCB, CV-72-00058-RCB.
 Before: CANBY and REINHARDT, Circuit Judges, and RESTANI,* Judge.
 RESTANI, Judge:
 
 
 1
 This is an appeal from an order of the district court denying a motion to terminate a consent decree affecting prison conditions and finding a provision of the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, § 802, 110 Stat. 1321, 1321-65 (1996) (codified as 18 U.S.C.A. § 3626(b)(2) (West.Supp.1998)) ("PLRA" or "the Act"), unconstitutional. That provision mandates immediate termination of previously granted prospective relief, if the relief was granted in the absence of newly-required findings. Id. Because the relief at issue here resulted from an agreement of the parties, no findings of fact and conclusions of law were issued at the time relief was granted, and no record was made from which such findings or conclusions could be drawn. We affirm.
 
 I. BACKGROUND[1]
 
 2
 In 1972, two inmates of the Arizona State Prison System filed class action complaints against defendants. The consolidated amended complaint asserted the defendants had violated the First, Eighth, and Fourteenth Amendments by adopting and enforcing unconstitutional disciplinary rules; denying prisoners procedural due process; unlawfully depriving prisoners of good time credits; and subjecting prisoners who were placed in isolation to inadequate diets and degrading living conditions. Before evidentiary hearings were completed, the State of Arizona and individual defendants' predecessors in office entered into a consent decree with plaintiffs. The decree provided for the adoption of new rules of discipline and the restoration of good-time credits. The district court determined under the law that existed at the time that it was inappropriate to make findings of fact or conclusions of law in these circumstances.
 
 
 3
 The consent decree did not end the dispute between the parties. For more than twenty years no litigation ensued, but on January 6, 1994, defendants filed a motion for modification of the consent decree, contending that changes in the law and factual circumstances warranted modifying the decree. In an order dated February 24, 1994, the district court granted that motion.
 
 
 4
 On January 18, 1995, two inmates--who are not named parties in this case--filed a motion to vacate the prior order because they were not given notice of the motion to modify the consent decree. In June 1996, they sought the same relief on behalf of "299 inmates."
 
 
 5
 Defendants did not respond to the inmates' motions, but eventually they filed a motion to terminate the consent decree pursuant to the PLRA. Newly-appointed counsel for the plaintiff class responded to defendants' motion to terminate, arguing that the PLRA was unconstitutional and moving to vacate the February 24, 1994 order because of defendants' failure to give notice. Pursuant to the PLRA the district court granted defendants' motion to terminate the consent decree because plaintiffs conceded they could not provide the findings required for continuation of the decree under the PLRA. The court, however, stayed that order pending a determination of whether the PLRA was constitutional. In its order of March 21, 1997, now on appeal, the district court declared 18 U.S.C.A. § 3626(b)(2) unconstitutional. The February 24, 1994 order was vacated but the vacation order was stayed pending resolution of the motion to modify the consent decree.
 
 
 6
 Defendants and the United States of America, which intervened pursuant to 28 U.S.C. § 2403(a) (1994) to defend the constitutionality of the PLRA, timely appealed.
 
 II. JURISDICTION AND STANDARD OF REVIEW
 
 7
 The district court had jurisdiction pursuant to 28 U.S.C. § 1331 (1994). We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) (1994), as this is an appeal from an interlocutory order of the district court refusing to dissolve an injunction. The issue of whether the statutory provision is constitutional is an issue of law subject to de novo review. See Masayesva v. Hale, 118 F.3d 1371, 1377 (9th Cir.1997).
 
 III. THE STATUTE
 
 8
 Section 3626(b)(2) of Title 18 provides:(2) Immediate termination of prospective relief.--In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.
 
 
 9
 Id.
 
 
 10
 A "limitation" on termination is set forth in 18 U.S.C.A. § 3626(b)(3). It reads:
 
 
 11
 (3) Limitation.--Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.
 
 
 12
 Id.[2] Section 3626(g)(9) provides that "[t]he term "relief" means all relief in any form that may be granted or approved by the court, and includes consent decrees but does not include private settlement agreements." Id.
 
 
 13
 Section 802(b)(1) of the Act makes the provisions of the PLRA applicable to "all prospective relief whether such relief was originally granted or approved before, on, or after the date of the enactment of [the PLRA]."
 
 
 14
 Section 3626(e)(2) provides for an automatic stay of the termination for thirty days after the filing of the motion to terminate. Presumably this is to allow the court an opportunity to assess the decree according to the new standards. Section (e) was amended to allow postponement of the automatic stay for sixty days for good cause, other than general calendar congestion. See Pub.L. No. 105-119, § 123(a)(3)(C), 111 Stat. 2440, 2470 (1997).
 
 
 15
 The language of the PLRA suffers from some lack of clarity. For example, the word "relief" is defined to include "consent decrees," 18 U.S.C.A. § 3626(g)(9), but a consent decree is not "relief," though it provides "relief."[3] Furthermore, 18 U.S.C.A. § 3626(c)(1), regarding consent decrees under the general heading "settlements," expressly incorporates the provisions of 18 U.S.C.A. § 3626(a)[4] but not the termination provisions of 18 U.S.C.A. § 3626(b). It is also not entirely clear how 18 U.S.C.A. § 3626(b)(1), which provides for termination of prospective relief after two years from the date of its granting or, as to pre-PLRA orders, from the date of enactment of the PLRA, is intended to fit with § 3626(b)(2) regarding immediate termination. For pre-PLRA consent decrees, regardless of age, findings necessary to the continuation of prospective relief would be lacking.
 
 
 16
 One might argue that one or more of these ambiguities enables us to read the statute in a manner that avoids the difficult constitutional question. That is, the statute might be read to avoid legislative termination of past consent decrees. See, e.g., Benjamin, 124 F.3d at 170. The legislative history, however, indicates otherwise.
 
 
 17
 There seems little doubt that the supporters of the PLRA intended to end perceived ongoing micro-management of state and local prison systems by the federal courts. Senator Abraham noted that "the legislation I am introducing today will return sanity and State control to our prison systems." 141 Cong. Rec. S14316 (daily ed. Sept. 26, 1995) (statement of Sen. Abraham). Similar thoughts were voiced by others. See Catherine G. Patsos, Note, The Constitutionality and Implications of the Prison Litigation Reform Act, 42 N.Y.L.Sch.L.Rev. 205, 206 n. 16 (1998). Moreover, the House Conference Report states expressly that "[p]rior consent decrees are made terminable upon the motion of either party, and can be continued only if the court finds that the imposed relief is necessary to correct the violation of the federal right." H.R. Conf. Rep. No. 104-378, at 166 (1995). We conclude that the inartful drafting is just that, and the meaning of § 3626(b)(2) is sufficiently clear that the question of its constitutionality is presented squarely.
 
 IV. CONSTITUTIONALITY OF PLRA § 3626(b)(2)
 
 18
 The main thrust of constitutional challenges to the PLRA has been based on separation of powers principles. A number of district courts, including the court below, have relied on such principles to invalidate § 3626(b)(2) of the PLRA. To date none of those decisions has been upheld. The circuits which have addressed the issue have found 18 U.S.C.A. § 3626(b)(2) constitutional. See Hadix v. Johnson, 133 F.3d 940, 942 (6th Cir.1998) (§ 3626(b)(2) does not violate separation of power principles); Dougan v. Singletary, 129 F.3d 1424, 1426 (11th Cir.1997) (same); Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 657 (1st Cir.1997) (same); Gavin v. Branstad, 122 F.3d 1081, 1088-89 (8th Cir.1997) (same); Plyler v. Moore, 100 F.3d 365, 371-73 (4th Cir.1996) (same), cert. denied, --- U.S. ----, 117 S.Ct. 2460, 138 L.Ed.2d 217 (1997); Benjamin, 124 F.3d at 173 (Section 3626(b)(2) is constitutional but does not terminate decree; only jurisdiction of federal court terminated).
 
 
 19
 We respectfully disagree with our sister circuits. We believe they have not applied Supreme Court precedent upholding the separation of powers among the several branches of government with sufficient force, and conclude that § 3626(b)(2) is indeed unconstitutional. The Act effectively terminates consent decrees which were entered into voluntarily to resolve constitutional claims arising from prison conditions. See 18 U.S.C. § 3626(b)(2). The various saving provisions are illusory. See 18 U.S.C. § 3626(b)(3). Congress, in violation of the Constitution, has reopened the final judgments of the federal courts and unconditionally extinguished past consent decrees affecting prison conditions.
 
 
 20
 No case is exactly on point, but four Supreme Court cases, when read together, provide a fairly clear answer. The first of these cases is Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 229, 115 S.Ct. 1447, 1458, 131 L.Ed.2d 328 (1995), in which the Supreme Court held that Congress does not have the power to reopen a final judgment rendered by an Article III court. The case required the Court to review an attempt by Congress to undo the effects of one of the Court's own recent decisions. Four years before Plaut, the Court had announced a new rule regarding the statute of limitations applicable to claims under § 10(b) of the Securities Exchange Act. See id. at 213-14, 115 S.Ct. at 1450-51 (discussing Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991)). As a result of that decision, some litigants with § 10(b) cases pending in federal court suddenly found their claims barred by the new statute of limitations and dismissed on the merits. See Plaut, 514 U.S. at 214, 115 S.Ct. at 1450-51. Late in 1991, then President Bush signed into law an amendment to § 10(b) that changed the applicable statute of limitations, effectively reversing Lampf. Id. In addition to restoring the old limitations period prospectively, the amendment also purported to have retroactive effect and to "undo" the dismissals on the merits that had followed Lampf, effectively reopening the final judgments in those cases and allowing the litigants once again to pursue their claims. See id. at 214-15, 115 S.Ct. at 1450-51. It was this application of the statute that the court reviewed in Plaut.
 
 
 21
 The Court held that Congress had exceeded its powers in seeking to reopen these final judgments.
 
 
 22
 When retroactive legislation requires its own application in a case already finally adjudicated, it does no more and no less than "reverse a determination once made, in a particular case." Our decisions stemming from Hayburn's Case[5]--although their precise holdings are not strictly applicable here--have uniformly provided fair warning that such an act exceeds the powers of Congress.
 
 
 23
 Id. at 225, 115 S.Ct. at 1456 (citations omitted) (quoting The Federalist No. 81, at 545 (Hamilton) (J. Cooke, ed., 1961)). Because "a dismissal on statute-of-limitations grounds" is treated, under the rules of finality, "as a judgment on the merits," id. at 228, 115 S.Ct. at 1457, the Court held that it was not open to Congress to undo final judgments that had relied upon the new rule announced in Lampf. Id. at 240, 115 S.Ct. at 1463. Congress applied its amendment retroactively to claims that had not proceeded to final judgment, even those that arose at the same time as the claims of the unlucky litigants whose cases were already in the pipeline. The Court held, however, that once the courts had spoken their "last word" with respect to the pending claims, Congress had no power to set aside the result. Id. at 227, 115 S.Ct. at 1457; see also Gavin, 122 F.3d at 1087 (discussing Plaut).
 
 
 24
 The question of whether a court has spoken the "last word" with respect to a claim is a more complicated one in the case of ongoing equitable relief. Consent decrees are unquestionably final judgments for some purposes, such as whether parties can appeal (or seek modification of) the relief crafted by a district court. See Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 391, 112 S.Ct. 748, 764, 116 L.Ed.2d 867 (1992) ("[A] consent decree is a final judgment that may be reopened only to the extent that equity requires."). In Plaut, however, the Court explicitly distinguished the statute before it from "legislation ... that altered the prospective effect of injunctions entered by Article III courts," Plaut, 514 U.S. at 232, 115 S.Ct. at 1459, citing its decision in Pennsylvania v. The Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855).
 
 
 25
 Wheeling involved a dispute over a bridge that spanned a public waterway. 59 U.S. at 429. In that case, the State of Pennsylvania had sued respondent (who built the bridge), claiming that the bridge obstructed navigation and had to be elevated or removed. Id. At first, the State prevailed and obtained an injunction requiring the company to remove the bridge. Id. Following this ruling, Congress passed a statute that established the bridge as a post-road, thereby effectively removing the legal grounds for the injunction. Id. Shortly thereafter, the bridge was washed out in a storm. Id. at 422. When the bridge company sought to rebuild, Pennsylvania attempted to interpose its original injunction, claiming that Congress had no power to undo the effects of that injunction by subsequent legislation. Id. at 429. The Court disallowed this attempt, resting its holding, in part, on a distinction between money judgments and executory injunctions.
 
 
 26
 The decree before us, so far as it respect[s] the costs adjudged, ... is unaffected by the subsequent law. But that part of the decree, directing the abatement of the obstruction, is executory, a continuing decree, which requires not only the removal of the bridge, but enjoins the defendants against any reconstruction or continuance. Now, whether it is a future existing or continuing obstruction depends upon the question whether or not it interferes with the right of navigation. If, in the meantime, since the decree, this right has been modified by the competent authority, so that the bridge is no longer an unlawful obstruction, it is quite plain the decree of the court cannot be enforced.
 
 
 27
 Wheeling, 59 U.S. at 431-32 (emphasis added). Because Congress changed the substantive law on which the court had based the injunction,--that is, the "right of navigation," Wheeling, 59 U.S. at 431,--it was appropriate for the Court to apply the newly changed law to its own injunction and, consequently, to deny Pennsylvania any continuing relief. Thus, Wheeling established the principle that the state of the law at the time a final judgment embodying a permanent injunction is entered is not part of what is "final" about the judgment. When the law changes while the permanent injunction is still in effect, it may be appropriate for a court to modify or terminate the injunction, even though it is a "final judgment," in response to the change in law, see Wheeling, 59 U.S. at 431-32, at least, "to the extent that equity requires." Rufo, 502 U.S. at 391. See also Agostini v. Felton, --- U.S. ----, 117 S.Ct. 1997, 2006, 138 L.Ed.2d 391 (1997) ("A court errs when it refuses to modify an injunction or consent decree in light of [statutory or decisional law] changes."). The question before us then is whether this is a case within the rule of Rufo/Plaut, or rather whether it is controlled by Wheeling, as some circuits seem to hold. See, e.g., Rouse, 129 F.3d at 656; Gavin, 122 F.3d at 1086.
 
 
 28
 What differentiates the termination provisions of the PLRA from Wheeling, where modification of the injunction was required, is the nature of the "change in law" that the PLRA brings about. The PLRA does not effect a change in the "substantive" law that gave rise to the consent decrees in this case, i.e., the Constitution. Here, what Congress has done is to define the scope and nature of the remedy that it finds appropriate for prisoners who claim constitutional violations. See 18 U.S.C.A. § 3626. With respect to the existing consent decrees, the only "change in law" that Congress has brought about is to say, "terminate the relief." See 18 U.S.C.A. § 3626(b)(2).
 
 
 29
 In this assessment we part company with our sister circuits, which apparently find this to be a sufficient change in underlying law. See, e.g., Rouse, 129 F.3d at 657. Even though the district court here, as is the norm for consent decrees, was never called upon to decide the factual and legal issues underlying the constitutional claims, it is clear that such claims were resolved by the consent decree, and the Constitution remains the law underpinning the dispute. The district court approved a particular resolution of the constitutional dispute and the constitutional provisions at issue remain the applicable law.[6] In other words, Congress did not somehow change the applicable law by altering the permissibility of certain types of consent decrees, for the only relevant inquiry is whether it changed the substantive law upon which the parties' consent decree and, more important, the district court's judgment was based. In this case, it clearly did not.
 
 
 30
 As stated in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., there is
 
 
 31
 a critical difference between rights created by federal statute and rights recognized by the Constitution ... [S]uch a distinction seems to us to be necessary in light of the delicate accommodations required by the principle of separation of powers reflected in Art. III. The constitutional system of checks and balances is designed to guard against "encroachment or aggrandizement" by Congress at the expense of the other branches of government. But when Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized tribunals.... No comparable justification exists, however, when the right being adjudicated is not of congressional creation. In such a situation, substantial inroads into functions that have traditionally been performed by the Judiciary cannot be characterized merely as incidental extensions of Congress' power to define rights that it has created. Rather, such inroads suggest unwarranted encroachments upon the judicial power of the United States, which our Constitution reserves for Art. III courts.
 
 
 32
 458 U.S. 50, 83-84, 102 S.Ct. 2858, 2877-78, 73 L.Ed.2d 598 (1982) (plurality opinion) (citations and footnote omitted) (quoting Buckley v. Valeo, 424 U.S. 1, 122, 96 S.Ct. 612, 683-84, 46 L.Ed.2d 659 (1976)).
 
 
 33
 The constitutional basis for the decree at issue also distinguishes the case at hand from Mount Graham Coalition v. Thomas, 89 F.3d 554, 556, 558 (9th Cir.1996), in which we affirmed dissolution of an injunction based on legislation specifically aimed at the district court's existing injunction. In that case, unlike the case before us, Congress' legislation "change[d] the [statutes upon which the injunction was based], which Congress is entitled to [do]." Id. at 557. Although the legislation was written in a form that simply provided that the environmental project at issue "shall be deemed to be consistent with, and permissible under" the relevant environmental statutes, we interpreted that language as a "shorthand" manner of amending those environmental laws. Id. Judge Noonan, in fact, concurred separately to emphasize that our interpretation of the legislation as effecting a change in underlying substantive law was necessary to save its constitutionality. See id. at 558-59 (Noonan, J., concurring). Thus, Mount Graham falls "squarely within Wheeling Bridge," id. at 557, as does the Supreme Court's decision in Robertson v. Seattle Audubon Soc'y, 503 U.S. 429, 438, 112 S.Ct. 1407, 1413, 118 L.Ed.2d 73 (1992), in which the Court held an amendment to a statute constitutional because it "compelled changes in law" and did not "purport[ ] to direct any particular findings of fact or applications of law, old or new, to fact." The Eighth Circuit in Gavin, recognized this distinction between changing the underlying substantive law, as in Wheeling, and altering the relief afforded with respect to the constitutional violations involved, as the PLRA does, but it did not find this difference of significance in resolving the constitutional issue arising from separation of powers principles. Gavin, 122 F.3d at 1087-88. We disagree that the nature of the underlying law is of no significance to the separation of powers issue. See City of Boerne v. Flores, --- U.S. ----, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997) (voiding Congressional attempt to supercede Supreme Court's interpretation of First Amendment free exercise of religion clause). We find in § 3626(b)(2) of the PLRA, not a generally applicable change in substantive statutory law, but a reopening by Congress of a set of final judicial decisions resolving constitutional claims.
 
 
 34
 Further, Congress has done more than simply reopen the final judgment and direct the court to cancel its decrees adjudicating constitutional matters. It has prescribed a rule of decision in a discrete group of Article III cases, in violation of United States v. Klein, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871).[7]
 
 
 35
 After the Civil War, Congress enacted a statute that permitted noncombatant Confederate landowners to recover confiscated property upon proof of loyalty to the Union. Id. at 131. Klein, representing the estate of a Confederate sympathizer who had been pardoned, presented evidence of the pardon as proof of loyalty in accordance with United States v. Padelford, 76 U.S. (9 Wall.) 531, 19 L.Ed. 788 (1869). Id. at 133-34. While the case was pending, Congress passed a statute declaring that a pardon proved just the opposite, disloyalty, and directed the dismissal based on lack of jurisdiction of any pending action on behalf of a pardon recipient. Id. The Supreme Court found the new act unconstitutional based on separation of powers. Id. at 146-47. The court distinguished Wheeling, not on the basis that injunctive relief was involved, but because in Wheeling "the court was left to apply its ordinary rules to the new circumstances created by the act." Id. at 147. In contrast, in Klein, the applicable law was not changed, but rather the court was "forbidden to give the effect to evidence which, in its own judgment, such evidence should have, and [was] directed to give an effect precisely contrary." Id.[8]
 
 
 36
 Here, Congress directed the outcome of this case and similarly situated pre-PLRA consent decrees. The decrees must terminate. 18 U.S.C.A. § 3626(b)(2). Because the decrees are issued upon consent, no findings of the sort required by § 3626(b)(2) were made, nor would they necessarily have been made, even in a contested case, given the absence in 1973 of such specific requirements.
 
 
 37
 Furthermore, the ostensible limitation on termination in 18 U.S.C.A. § 3626(b)(3) provides no room for judicial decision-making. First, the court cannot now make the findings required by 18 U.S.C.A. § 3626(b)(3), because no record was made. One of the normal purposes of consent to the judicial decree is to avoid making a record which would lead to such findings. Second, if the consent decree is being obeyed, there are no "current and ongoing violations." 18 U.S.C.A. § 3626(b)(3). Such violations must be found in order to continue the decree. Id. Third, if violations of the past decree were occurring, to continue the decree the prisoner class would be required to prove an entirely new case, to establish a present constitutional violation of the same magnitude as would warrant relief had the existing case never occurred. The court would then be required to render a decision, within, at most, ninety days from the date of filing of the motion in this "new case." 18 U.S.C.A. § 3626(a)(2). This all but prohibits meaningful discovery, hearing, briefing, and decision-making. If there were violations, the decree likely would end before this could be demonstrated and the inmates would be in no better position than if they simply started a new action. All they can achieve under the PLRA is what can be achieved through any new action which proves current violations. Thus, pre-PLRA consent decrees effectively are extinguished.
 
 
 38
 While the PLRA purports to limit relief to what is barely necessary to prevent constitutional harm, in fact it prohibits any relief based on past constitutional violations which resulted in consent decrees. Congress has clearly prescribed the decision for past cases in which consent decrees were approved by Article III courts: no relief. If we were in doubt as to whether the rule of Plaut forbidding Congressional reopening of final judgments should be applied to the termination of the prospective relief aspects of consent decrees, the doubt is resolved where, as here, Congress has unconditionally terminated relief approved by the court as a remedy for constitutional violations.
 
 
 39
 Because we find § 3626(b)(2) unconstitutional on separation of power grounds, we do not reach appellees' due process arguments.
 
 
 40
 AFFIRMED.
 
 
 
 *
 Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation
 
 
 [1]
 We adopt the district court's recitation of the facts
 
 
 [2]
 "Current or ongoing" was changed to "current and ongoing" by Pub.L. No. 105-119, § 123(a)(2), 111 Stat. 2440, 2470 (1997). Although this change applies to pending cases, it has no relevance to the issues discussed herein. Id. § 123(b)
 
 
 [3]
 This distinction was central to the holding of Benjamin v. Jacobson, 124 F.3d 162, 170 (2d Cir.1997) (rehearing en banc granted December 23, 1997), that 18 U.S.C.A. § 3626(b) does not terminate the consent decree itself but eliminates the jurisdiction of the federal courts to provide prospective relief. This in turn led the court to find 18 U.S.C.A. § 3626(b) constitutional
 
 
 [4]
 Section 3626(a) of Title 18 provides standards for prospective relief and limitations on the extent of relief. It also requires a three-judge court for issuance of prisoner relief orders. 18 U.S.C.A. § 3626(a)(3)(C)
 
 
 [5]
 See Hayburn's Case, 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792)
 
 
 [6]
 Further, the consent decree at issue here was not built on shifting sands. For over twenty years the parties accepted the injunction as the final judgment resolving their dispute in the manner agreed upon. The district court has yet to decide whether modification, based on changing facts or law, other than the PLRA, is now appropriate
 
 
 [7]
 This argument was raised below, but not briefed on appeal. It was discussed at oral argument. As this issue is purely an issue of law, we may address it. We do so because it is another aspect of the separation of powers principles before us. The circuits which have addressed the issue have rejected it for the same reasons they find Wheeling applicable. See, e.g., Rouse, 129 F.3d at 657-58
 
 
 [8]
 This case, therefore, is once again materially different from Mount Graham, in which we carefully noted that because Congress had made a "change in the AICA, which [it] is entitled to make," the statute at issue, like the statute in Robertson, "did not violate the rule of United States v. Klein, which prohibits Congress from directing a particular decision in a case without repealing or amending the law underlying the decision." 89 F.3d at 557-58