**Ronald W. HARVEY, et al.**

v.

**Kenneth SCHOEN, et al.**

**No. 3–72–CV–73 (JMR/RLE).**

United States District Court,
D. Minnesota.

April 7, 1999.

## ORDER

ROSENBAUM, District Judge.

Plaintiffs object to the Report and Recommendation, issued January 28, 1999, by the Honorable Raymond L. Erickson, United States Magistrate Judge. Plaintiffs' objections to the Report were timely filed, pursuant to Local Rule 72.1(c)(2). Objections were filed by the Minnesota State Public Defender's office on behalf of the plaintiff class. Additionally, objections were timely filed by multiple *pro se* plaintiffs: Beck f/k/a David Wayne Vanderbeck, Gale Rachuy, Carey Riley, Preston Ridsdale, Jose Antono Rivera, and Clark Kruger.

Based upon a *de novo* review of the record herein, the Court adopts the Magistrate's Report and Recommendation in full. Accordingly, IT IS ORDERED that:

1. Defendant's Motion to Terminate the Consent Decree [Docket No. 175] is granted.

2. Rivera's Motion in Support of Memoranda of Civil Action and Determination and Protection of Class and Order of Conduct [Docket No. 149] is denied as moot.

3. Rivera's Motion for Clarification and Proper Certificate for Ailing Action [Docket No. 153] is denied as moot.

4. Hendrickson's Motion for Contempt of Court Orders and for Order Prohibiting Further Discipline Prosecution [Docket 154] is denied as moot.

5. Bruyette's Motion for Contempt of Court Charges Upon Defendants Successors in Office [Docket No. 156] is denied as moot.

6. Kruger's Motion for Contempt of Court and Order for Compensatory Damages Against the Defendants, their Agents, and the Successors in Office [Docket No. 159] is denied as moot.

7. Kruger's Motion for Appointment of Counsel [Docket No. 166] is denied as moot.

8. Kruger's Motion for Contempt of Court [Docket No. 166] is denied as moot.

9. Rachuy's Motion for Contempt of Court [Docket No. 167] is denied as moot.

10. Rivera's Motion to Deny Defendants Motion [Docket No. 171] is denied as moot.

11. Rachuy's Motion to Enjoin Consent Decree [Docket No. 181] is denied as moot.

12. Rachuy's Motion to Enjoin Consent Decree [Docket No. 183] is denied as moot.

13. Ridsdale's Motion to Find Defendants' Successors in Contempt of the Court's Order and Consent Decree [Docket No. 186] is denied as moot.

14. Riley's Motion for Contempt of Court [Docket No. 187] is denied as moot.

15. Ridsdale's Motion to Find the Defendants in Contempt of Court [Docket No. 188] is denied as moot.

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

At Duluth, in the District of Minnesota, this 28th day of January, 1999.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Defendant's Motion to Terminate the Consent Decree that was previously entered in this matter.

A Hearing on the Motion was conducted on May 21, 1998, at which time the Plaintiffs appeared by Leslie J. Rosenberg, Esq., and the Defendants appeared by W. Karl Hanson, Esq.

For reasons which follow, we recommend that the Defendants' Motion be granted.

### II. *Factual and Procedural Background*

In 1972, a class of inmates at the Minnesota Correctional Facility at Stillwater ("MCF–STW") filed a Complaint on behalf of incarcerated and released inmates, alleging than the Defendants were subjecting them to certain rules and regulations in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; the Civil Rights Acts of 1865, 1879, 1871, 1957, 1964, Title 28 U.S.C. §§ 1331, 1343, 2201 and 2202; and Title 42 U.S.C. §§ 1983 and 1988. See, *Inmate 24394 v. Schoen,* 363 F.Supp. 683 (D.Minn.1973). In addition, the Plaintiffs claimed that, pursuant to Minnesota Statutes Section 243.52 (1972), and the regulations of the agencies, the Defendants "exercised punitive powers, established, maintained and operated institutional courts, termed 'Disciplinary Committees,' exercised the power to all types of punishment, loss of liberty, of statutory good time, parole work release, extension of time, isolation, segregation, confinement to quarters, loss of privileges, reduction in pay, job changes, and changes in custody classification." *Id.*

Thereafter, inmates at the Minnesota Correctional Facility at St. Cloud ("MCF–SCL") petitioned to intervene. See, *Petition of September 6, 1972 to Join Plaintiffs, Inmate 24394 v. Schoen,* supra. In early 1973, the Court allowed additional Plaintiffs to file an Amended Complaint in order to join the MCF–SCL inmates as Plaintiffs in this action. See, *Order, Dated May 29, 1973, Inmate 24394 v. Schoen,* supra.

In September of 1973, the parties entered an agreement concerning the disciplinary procedures to be implemented by the Defendants at MCF–STW, and MCF–SCL. The agreement was approved by the Court in an Order—the *"Schoen* Decree"—that was filed on September 10, 1973. See, *Inmate 24394 v. Schoen,* supra.

The Order also dismissed, with prejudice, all of the damage claims against the Defendants. See, *Id.* at 689.

The *Schoen* Decree established the following procedures for disciplinary proceedings at MCF–STW and MCF–SCL:

1. A full Hearing would be conducted, before the respective institution's disciplinary board, before any disciplinary action could be taken for any inmate accused of violating a rule of the institution;

2. Written notice of the Hearing would be provided as soon as possible, but by no later than five days after the inmate had been charged with a rules violation or, if the inmate was being detained prior to his disciplinary Hearing, within 24 hours of the detention;

3. The Written notice would be provided in two parts, with "Part A" to include: (a) a verbatim statement of the prison rule allegedly violated; (b) a summary of the facts upon which the alleged violation is based; (c) a list of adverse witnesses and a brief statement of their testimony; (d) a list of physical evidence that the institution intends to introduce; (e) a declaration of the maximum penalty for each violation; (f) the date and time of the scheduled Hearing before the disciplinary board; (g) a statement of the rights that the inmate would have at a disciplinary Hearing; and (h) optionally, a statement of the sentence to be imposed if the inmate waived his Hearing and pled guilty. "Part B" of the Notice would include: (a) a form for the inmate to list his witnesses, a brief statement of their expected testimony, and such evidence as he deems material; (b) a provision for the inmate to waive his rights and plead guilty to the charge; and (c) a space for the inmate to write any further information he wishes. Personal delivery of the notice to the inmate was required in order to inform him that he must complete "Part B" within 24 hours after receipt;

4. Hearings would be scheduled no sooner than 4 days after the delivery of the notice;

5. Continuances would be granted for good cause;

6. Pre-hearing detention procedures were provided;

7. Disciplinary Hearing procedures were established including, but not limited to the following: the right to appear personally and be heard, to confront and cross-examine all adverse witnesses, to introduce three witnesses, and to be represented by counsel, or a counsel substitute;

8. Disciplinary findings would be made, including "a finding of guilty by a majority vote of the members, who must be convinced that the inmate's guilt is more probable than his innocence;" and

9. An appeal to the Warden or his/her designee, would be allowed. See, *id.* at 684–88.

The *Schoen* Decree also mandated that the Defendants establish criteria for the use of force and chemicals, and for determining whether an inmate's disciplinary sentence should be stayed on appeal. The Decree also required that a list of disciplinary rules would be available to all inmates, and established criteria for nonpunitive detention and procedures. *Id.* at 688–89. Finally, the Decree set forth procedures for modifying the established criteria, or procedures, of the Court's Order. *Id.* at 689.

In the twenty-five years since the issuance of the *Schoen* Decree, none of the claims, which have alleged violations of the Decree, have been judicially sustained. In 1975, this Court dismissed the claims of two inmates who sought damages for an alleged due process violation under the *Schoen* Decree. See, *Orders of Dismissal as to White and Harvey, Dated September 19, 1975, and October 31, 1975, Inmate 24394 v. Schoen,* supra. In 1996, two other inmates sought to enforce provisions of the Decree, which resulted in a dismissal of their claim. See, *Order, dated April 14, 1998, Inmate 24394 v. Schoen,* supra. In March of 1998, inmate Clark Kruger filed a contempt Motion but, thereafter, he voluntarily dismissed his Motion with prejudice, pursuant to Rule 41(a), Federal Rules

of Civil Procedure. Since April of 1998, inmates Clark Kruger, David Hendrickson, Joseph Bruyette, Hose Rivera, Gale A. Rachuy ("Rachuy"), and Preston Risdale, have filed Motions for Contempt against the Defendants arising from asserted violations of the *Schoen* Decree and, on October 19, 1998, Rachuy filed a Motion to Enjoin the *Schoen* Decree at the Minnesota Correctional Facilities at Willow River and Moose Lake. These Motions are currently pending before the Court.

### III. *Discussion*

A. *Standard of Review.* Congress recently enacted the Prison Litigation Reform Act ("PLRA"), which provides for the immediate termination of prospective relief in certain Federal actions concerning prison conditions. See generally, *Title 18 U.S.C. § 3626(b).* The PLRA provides the prospective relief, which was granted prior to the enactment of the Statute, is terminable upon the Motion of any party two years after the date of the PLRA's enactment. See, *Title 18 U.S.C. § 3626(b)(1)(iii).* The PLRA was signed into law on April 26, 1996, thus permitting this Court to consider the Defendants' Motion to Terminate at this time.

▇▇ Congress enacted the Statute "to relieve states of the onerous burden of complying with consent decrees that often reach far beyond the dictates of federal law." *Plyler v. Moore,* 100 F.3d 365, 370 (4th Cir.1996), cert. denied, 520 U.S. 1277, 117 S.Ct. 2460, 138 L.Ed.2d 217 (1997); see also, *Inmates of Suffolk Co. Jail v. Rouse,* 129 F.3d 649, 655 (1st Cir.1997), cert. denied, — U.S. —, 118 S.Ct. 2366, 141 L.Ed.2d 735 (1998) (Congress intended to truncate the Federal Judiciary's involvement in day-to-day prison administration).

Section 3626(b)(1) of the PLRA provides as follows:

> In any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervenor *** in the case of an order issued on or before the date of enactment of the Prison Litigation Reform Act, 2 years after such date of enactment.

*Title 18 U.S.C. § 3626(b)(1).*

In addition, Section 3626(b)(2) provides:

> In any civil action with respect to prison conditions, a Defendant or intervener be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violations of the Federal right.

*Title 18 U.S.C. § 3626(b)(2).*

Finally, the PLRA provides that a Motion to terminate prospective relief, which is filed pursuant to Section 3626(b)(1) or (b)(2) "shall operate as a stay during the period beginning on the 30th day after such motion is filed." *Title 18 U.S.C. § 3626(3)(2)(A)(i).* A Court may postpone the effective date of the stay, in its discretion, for a period of 60 days. See, *Title 18 U.S.C. § 3626(e)(3).*

▇▇ The PLRA expressly identifies consent decrees as one of the forms of prospective relief that are covered by its provisions. See, *Title 18 U.S.C. § 3626(g)(9).* "A consent decree" means "any relief entered by the court that is based in whole or in part upon the consent or acquiescence of the parties but does not include private settlements." *Title 18 U.S.C. § 3626(g)(7).* The Eighth Circuit, joining the First, Second, Fourth, Sixth, and Eleventh Circuits [1]—and contrary to the argu-

---

1. See, *Inmates of Suffolk Co. Jail v. Rouse,* 129 F.3d 649, 655 (1st Cir.1997), cert. denied, — U.S. —, 118 S.Ct. 2366, 141 L.Ed.2d 735 (1998); *Benjamin v. Jacobson,* 124 F.3d 162 (2nd Cir.1997); *Plyler v. Moore,* 100 F.3d 365, 370 (4th Cir.1996); *Hadix v. Johnson,* 133 F.3d 940 (6th Cir.1998), cert. denied, — U.S. —, 118 S.Ct. 2368, 141

L.Ed.2d 737 (1998); *Dougan v. Singletary,* 129 F.3d 1424 (11th Cir.1997), cert. denied, — U.S. —, 118 S.Ct. 2375, 141 L.Ed.2d 743 (1998). But see, *Taylor v. Arizona,* 143 F.3d 1178 (9th Cir.1998), reh'g *en banc* granted, 158 F.3d 1059 (9th Cir.1998) (holding termination provision unconstitutional).

ments of Plaintiffs that the termination provisions of the PLRA are unconstitutional, has concluded that the immediate termination provisions of the PLRA are constitutional. See, *Tyler v. Murphy*, 135 F.3d 594 (8th Cir.1998) (holding that the PLRA does not unconstitutionally impinge on a Federal Court's ability to remedy constitutional violations); *Gavin v. Branstad*, 122 F.3d 1081 (8th Cir.1997) (rejecting separation of powers, equal protection, and due process claims against the PLRA). Of course, the legal determinations of our Court of Appeals, including its holding that the PLRA's termination provisions are constitutional, are binding upon this Court. See, *BPS Guard Services., Inc. v. NLRB*, 942 F.2d 519, 524 (8th Cir.1991); *Duffy v. Currier*, 291 F.Supp. 810, 813 (D.Minn. 1968); *Kubus v. Swenson*, 120 F.Supp. 379, 381 (D.Minn.1954).

B. *Legal Analysis.* Consistent with the requirements of the PLRA, to be subject to termination, the *Schoen* Decree must satisfy two criteria. First, it must *not* contain the required finding that it "extends no further," and is the "least intrusive means necessary" *** "to correct the violation of a Federal right." *Title 18 U.S.C. § 3626(b)(3).* Second, there must be no "current and ongoing" violations of Federal rights to which the Decree may be applied. See, *Id.* We address each of these requisites, in turn.

1. *The "Narrowly Drawn" to "Correct the Violation of a Federal Right" Criterion.*

a. *Standard of Review.* As noted, to be subject to termination under the PLRA, the prospective relief must have, in the first instance, been entered into without a finding, by the issuing Court, that it was "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of a Federal right." *Title 18 U.S.C. § 3626(b)(2); Inmates of Suffolk Co. Jail v. Rouse*, supra at 655 (the PLRA mandates the termination of consent decrees altogether unless the District Court makes

the specific findings that are necessary to keep a particular decree alive). The phrase "Federal right" is not defined by the PLRA. The Court of Appeals for the Fourth Circuit, however, has determined "that the term 'Federal right,' as used in Section 3626(b)(2) does not include rights covered by consent decrees providing relief greater than that required by federal law." *Plyler v. Moore*, supra at 370. This interpretation is consistent with the congressional intent of the PLRA and does not raise constitutional concerns. *Id.*

■ b. *Legal Analysis.* In 1973, at the time that the parties entered the *Schoen* Decree, the issuing Court did not make the findings expressly required by Section 3626(a)(1). Rather, the Court made only the following findings:

1. The Plaintiffs were a proper class pursuant to Rule 23, Federal Rules of Civil Procedure;

2. The damages claims arising out of the disciplinary procedures were dismissed against Schoen, McManus, and McRae;

3. The procedures set forth in the Order were to be implemented at MCF–STW and MCF–SCL;

4. The criteria and procedures set forth in the Order were to be filed with the Court and incorporated into the Order; and

5. The Order was not to be construed in any way to mean that prior disciplinary proceedings conducted by the Defendants, their predecessors or agents violated the law.

*Inmate 24394 v. Schoen*, supra at 683.

Given the unequivocal fact, that the *Schoen* Decree does not contain the findings required by the PLRA, the first element of the analytical framework has been fully satisfied, and we proceed to the second factor in our analysis. See, *Title 18 U.S.C. § 3626(b)(2); Gavin v. Branstad*, supra at 1084; *Inmates of Suffolk Co. Jail v. Rouse*, supra at 655.

### 2. The "No Current or Ongoing Violations of Federal Rights" Criterion.

a. *Standard of Review.* Section 3626(b)(3) provides a limitation upon the Court's authority to terminate prospective relief concerning prison conditions, which requires the Court to review the Record in order to determine whether the prospective relief "remains necessary to correct a current and ongoing violation of the Federal right." *Title 18 U.S.C. § 3626(b)(3); Plyler v. Moore,* supra at 369 (a Court is prohibited from terminating prospective relief if that relief remains necessary in order to correct a current and ongoing violation of a Federal right).

■ B. *Legal Analysis.* The Record before us contains no evidence of a current and ongoing violation of a Federal right at MCF–STW, or MCF–SCL. Although the Plaintiffs suggested, at oral argument, that further investigation might uncover a violation of the Plaintiffs' Federal rights, the 25–year history of the *Schoen* Decree reveals that, at no time, have the Defendants violated that Decree, let alone the Federal rights of these Plaintiffs. Undaunted, the Plaintiffs contend that, despite the 25–year record of compliance with the Decree, it is necessary to allow additional discovery in order to "show what past practices persist[,] and what the past consequences of these practices have been." See, *Pl. Memo. In Opposition* at 12. On the Record before us, however, we find no responsible ground to delay the termination of the *Schoen* Decree. While the Court is empowered to conduct those proceedings which would be necessary to assure the absence of "current and ongoing violations," the Plaintiffs have offered no showing that those violations have been present, but have escaped their notice for a quarter of a century. As support for their assertion of some form of ongoing violation of Federal rights, the Plaintiffs are only able to cite those violations which were the initial basis for the *Schoen* Decree, and to note that, pending before the Court, are Motions for contempt of that Decree. In those Motions, however, the inmates only allege violations of the *Schoen* Decree, and they do not assert violations of any independent Federal rights. As such, we have no competent basis to find that Federal rights are being violated on a current and ongoing basis, for the protections afforded by the *Schoen* Decree exceed those available to inmates under the Constitution, or the applicable Federal law. Accordingly, we find that there are no Section 3626(b)(3) violations which are current or ongoing at this time, and there is no present bar to the immediate termination of the *Schoen* Decree.[2]

■ The Plaintiffs also urge that we look to the potential reoccurrence of the violations which, originally, gave rise to the *Schoen* Decree, if we were to grant the Defendants' Motion to Terminate. To this end, the Plaintiffs point to the Defendants' proposed inmate discipline policy, which would be implemented upon the termination of the *Schoen* Decree. Specifically, the Plaintiffs complain that this discipline policy would deny the Plaintiffs certain of their due process guarantees. See, *Pl. Memo. In Opposition* at 17. However, Section 3626 does not contain any requirement that the Defendants must promise to maintain the *status quo,* if the Court determines that a consent degree should be terminated. See, *Vazquez v. Carver,* 18 F.Supp.2d 503, 513 (E.D.Pa.1998). Moreover, should the Plaintiffs' fear of the renewed violation of their Federal rights be realized, the Plaintiffs may commence a new action to vindicate any post-termination infringement of those rights. Accordingly, we recommend that the Defendants' Motion to Terminate the Consent Decree be granted, effective immediately.

NOW, THEREFORE, It is—

---

**2.** We further note that, notwithstanding the passage of some period of time, since we heard argument on this Motion, the Plaintiffs have drawn nothing to our attention, which would so much as intimate that any Federal rights are currently being violated on an ongoing basis at either MCF–STW, or MCF–SCL.

RECOMMENDED:

1. That the Defendant's Motion for to Terminate the Consent Decree [Docket No. 175] be granted.

2. That the Movant's (Rivera's) Motion in Support of Memoranda of Civil Action and Determination and Protection of Class and Order of Conduct [Docket No. 149] be denied as moot.

3. That the Movant's (Rivera's) Motion for Clarification and Proper Certificate for Ailing Action [Docket No. 153] be denied as moot.

4. That the Movant's (Hendrickson's) Motion for Contempt of Court Orders & for Order Prohibiting Further Discipline Prosecution [Docket No. 154] be denied as moot.

5. That the Movant's (Bruyette's) Motion for Contempt of Court Charges Upon Defendants Successors in Office [Docket No. 156] be denied as moot.

6. That the Movant's (Kruger's) Motion for Contempt of Court and Order for Compensatory Damages Against the Defendants, their Agents and the Successors in Office [Docket No. 159] be denied as moot.

7. That the Movant's (Kruger's) Motion for Appointment of Counsel [Docket No. 166] be denied as moot.

8. That the Movant's (Kruger's) Motion for Contempt of Court [Docket No. 166] be denied as moot.

9. That the Movant's (Rachuy's) Motion for Contempt of Court [Docket No. 167] be denied as moot.

10. That the Movant's (Rivera's) Motion to Deny Defendants Motion [Docket No. 171] be denied as moot.

11. That the Movant's (Rachuy's) Motion to Enjoin Consent Decree [Docket No. 181] be denied as moot.

12. That the Movant's (Rachuy's) Motion To Enjoin Consent Decree [Docket No. 183] be denied as moot.

13. That the Movant's (Ridsdale's) Motion to Find Defendants' Successors in Contempt of the Court's Order and Consent Decree [Docket No. 186] be denied as moot.

14. That the Movant's (Riley's) Motion for Contempt of Court [Docket No. 187] be denied as moot.

15. That the Movant's (Risdale's) Motion to find the Defendants in contempt of Court [Docket No. 188] be denied as moot.

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D.Minn. LR1.1(f), and D.Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 12, 1999,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than January 12, 1999,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.