**Robert Lee DENIKE, et al., Plaintiffs,**

**v.**

**William H. FAUVER, et al., Defendants.**

**No. Civ. 83–2737(DRD).**

United States District Court,
D. New Jersey.

May 4, 1998.

---

Gibbons, del Deo, Dolan, Griffinger & Vecchione, A Professional Corporation by. Lawrence S. Lustberg, Laura K. Abel, Newark, New Jersey, for plaintiff Class.

Peter Verniero, Attorney General of New Jersey by Ronald L. Bollheimer, Gregory A. Spellmeyer, Deputy Attorneys General, Trenton, New Jersey, for defendants.

Frank W., Hunger, Assistant Attorney General, Vincent M. Garvey, Deputy Branch Director by William R. Kirschner, Trial Attorney, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, Faith S. Hochberg, United States Attorney by Susan Cassell, Assistant U.S. Attorney, Newark, NJ, for intervenor.

## OPINION

DEBEVOISE, Senior District Judge.

Defendants, officials and employees of the New Jersey State Department of Corrections, seek to terminate the Stipulation of Dismissal ("consent decree") agreed to and signed by the parties on April 6, 1984 and entered on May 15, 1984, pursuant to the immediate termination provisions of the Prison Litigation Reform Act ("PLRA"). 18 U.S.C. §§ 3626(b)(2), (3) (1996) (amended 1997). Plaintiffs, representing a class consisting of inmates of the New Jersey prison system, contend that the termination provisions of the PLRA are unconstitutional because they violate the separation of powers doctrine by requiring the reopening of a final judgment, by prescribing a rule of decision in a pending action and by depriving the Court of the ability to provide an effective remedy for violations of Plaintiffs' constitutional rights. Additionally, Plaintiffs argue that the immediate termination provisions violate their right to equal protection.

Because the immediate termination provision of § 3626(b) violates the separation of powers doctrine as articulated in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), Defendants' motion will be denied.

## FACTS AND PROCEDURAL HISTORY

On July 24, 1983, Robert Lee Denike and Kenneth Vespa, inmates at Rahway State Prison, initiated this. civil action, *pro se*, against Defendants. Plaintiffs contended that Defendants, in conducting urine tests of inmates under their custody and control, had violated the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Two other *pro se* complaints contesting the urine tests were filed with this court by inmates Earl Bennett (Civil Action No. 83–4049) and Clyde Briggs (Civil Action No. 83–4321). The three cases were consolidated in Civil Action No. 83–2737. Subsequently, Plaintiff Vespa withdrew from the action.

Pursuant to Plaintiffs' motion, the court granted an Order certifying the consolidated cases as a class action. The named Plaintiffs were certified to represent the interests of all present and future inmates that have been, are, or will be subjected to urine analysis utilizing an Enzyme Multiple–Immunoassay ("EMIT") test, administered by the Defendants. *See Denike, et al. v. Fauver, et al.*, Civ. No. 83–2737, slip op. (D.N.J. Apr. 6, 1984) (Order Directing Notice of Proposed Settlement).

Subsequent settlement discussions between the parties resulted in the signing of the consent decree on April 6, 1984. After the final hearing conducted on May 14, 1984, the court entered the consent decree on May 15, 1984. The decree set forth detailed procedures governing the circumstances in which urine monitoring could be ordered, the manner in which the tests were to be administered, and the manner in which urine specimens were to be handled and tested. These provisions were designed to permit prison officials to take all necessary steps to investi-

gate and discipline inmates using or distributing illegal drugs and at the same time require fair and reliable procedures. From time to time, inmates have instituted proceedings to enforce one or another provision of the consent decree, but it would appear that since May 15, 1984 until the present time, urine monitoring has been conducted in the New Jersey prisons without interference with prison security and disciplinary requirements and in accordance with procedures that ensured that inmates were treated fairly.

On January 26, 1998, Defendants filed their notice of motion seeking to terminate the consent decree pursuant to the immediate termination provisions of the PLRA. On April 9, 1998, the United States Department of Justice, pursuant to 28 U.S.C. § 2403(a), intervened on the question of the constitutionality of these provisions.

### THE PRISONER LITIGATION REFORM ACT

In 1996, President Clinton signed into law the Prison Litigation Reform Act of 1995, the purpose of which is to reduce federal judicial involvement in prison administration. Congress perceived that the federal judiciary had arrogated the authority of states to manage and regulate their own prisons and that the federal courts had usurped this authority to give inmates even greater rights than they were entitled to under the Constitution.[1] To reduce such judicial involvement, the PLRA entitles defendants in prison condition lawsuits to

> immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court

that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(b)(2). This provision is applicable to consent decrees even if they were entered into prior to the PLRA's enactment. 18 U.S.C. § 3626(b)(1)(A)(iii). The PLRA further provides, however, that

> [p]rospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(3), as amended by the Department of Justice Appropriations Act, 1998, Pub.L. No. 105–119, § 123(a)(2), 111 Stat. 2440, 2470 (1997).

On the present motion, Plaintiffs take no formal position regarding whether the requirements of § 3626(b)(2) have been met, or whether the court could, or should, enter findings pursuant to § 3626(b)(3). It is quite apparent, however, that the consent decree does not meet the requirements of § 3626(b)(2).[2] Plaintiffs contend that notwithstanding that fact, the provisions of § 3626(b)(2) of the PLRA cannot be applied in this case because to do so would violate the separation of powers doctrine by requiring the reopening of a final judgment, by prescribing a rule of decision in a pending case, and by depriving the court of the ability

---

**1.** *See* 141 Cong.Rec. S14, 413–14 (daily ed. Sept. 27, 1995) (statement of Senator Dole) ("[The PLRA] will work to restrain liberal Federal judges who see violations of constitutional rights in every prisoner complaint and who have used these complaints to micromanage State and local prison systems."); *Hearings on Prison Reform Before the Senate Comm. on the Judiciary,* 104th Cong.1st Sess. (July 27, 1995) (statement of Senator Hutchinson) ("Prisons exist for the protection of society—not for the comfort and convenience of criminals. Interference by federal courts has put the interests of criminals ahead of the interests of victims and law-abiding citizens.")

**2.** *See Taylor v. Arizona,* 972 F.Supp. 1239, 1243 (D.Ariz.1997) (appeal pending) (noting that it is improbable that any plaintiff could successfully contest a defendant's motion to terminate since the requirements of the PLRA are unlikely to appear in the record because consent decrees necessarily evade judicial findings, courts were under no obligation to administer a "least intrusive" analysis and it would be impossible for courts to make findings when the consent decree was entered into before the end of all evidentiary hearings.)

to provide an effective remedy for violations of Plaintiffs' constitutional rights.[3]

## DISCUSSION

### A. Cases Dealing with § 3626(b)(2):

The court is not writing on a clean slate. Two district courts have ruled that the immediate termination provision of the PLRA as applied to final judgments is unconstitutional. *See Taylor,* 972 F.Supp. at 1239; *McClendon v. Albuquerque,* Civ. No. 95–24 MV/RLP, slip op. at 7 (D.N.M. Oct. 29, 1996). Six courts of appeals, on the other hand, have upheld the constitutionality of that provision. *See Hadix v. Johnson,* 133 F.3d 940, 943 (6th Cir. 1998) (prospective equitable relief in consent decrees remains subject to subsequent changes in the law); *Dougan v. Singletary,* 129 F.3d 1424, 1425 (11th Cir.1997) (District Court retains jurisdiction to amend consent decrees as significant changes in laws and fact require), *petition for cert. filed,* (Mar. 2, 1998) (No. 97–8120); *Inmates of Suffolk County Jail v. Rouse,* 129 F.3d 649, 656 (1st Cir.1997) (consent decrees mandating forward-looking injunctions are final judgments subject to revision to the extent required by equity), *petition for cert. filed,* (Feb. 4, 1998) (No. 97–1278); *Benjamin v. Jacobson,* 124 F.3d 162, 173 (2d Cir.1997) (termination provision merely limits remedial jurisdiction of federal court), *reh'g en banc granted,* (Dec. 23, 1997); *Gavin v. Branstad,* 122 F.3d 1081, 1087 (8th Cir.1997) (consent decree is an executory form of relief that remains subject to later developments), *petition for cert. filed,* (Jan. 5, 1998) (No. 97–7420); *Plyler v. Moore,* 100 F.3d 365, 371 (4th Cir.1996) (judgment providing for injunctive relief remains subject to subsequent changes in law), *cert. denied,* —— U.S. ——, 117 S.Ct. 2460, 138 L.Ed.2d 217 (June 16, 1997) (No. 96–8596).

In a recent opinion, the district court for the Eastern District of Pennsylvania upheld the constitutionality of the termination provision of the PLRA. *See Imprisoned Citizens Union v. Milton Shapp,* Docket Nos. 70–3054, 70–2545, 71–513, 71–1006, 1998 WL 220957, —— F.Supp. —— (E.D.Pa. Apr. 27, 1998). The court held that the provision neither required the reopening of final judgments nor dictated a rule of decision in pending cases and thus did not violate separation of powers principles.

Although the Court of Appeals for the Second Circuit ruled that the PLRA's termination provision is not constitutional, that ruling was based upon a saving construction of the statutory language which no other court of appeals has accepted and which both parties in the present case urge the court to reject. *See Benjamin,* 124 F.3d at 162. The language in question is set forth in § 3626(b)(2) which entitles a defendant or intervenor to "immediate termination of prospective relief" in cases where a court had originally granted such relief without making the findings that are now mandatory under § 3626(a).

In *Benjamin,* the court found the language to be ambiguous. It stated, "[i]f 'prospective relief' includes the past Decrees themselves, then these are terminated and annulled under the law. If, instead, 'termination of prospective relief' means that no future relief—that is neither future enforcement nor articulation—is available in federal courts under past Decrees, then the Decrees remain valid, but no longer subject to federal jurisdiction." *Id.* at 167. Under this latter interpretation, the decree remains valid and enforceable in the state courts but not the federal courts. Mindful of the principle that a statute must be construed to avoid constitutional questions whenever such a construction is "fairly possible," the Court of Appeals adopted the latter interpretation.

The court repeatedly noted that its holding that the termination provision is constitutional was premised upon the construction of the statute:

> We therefore cannot agree that the termination provision is an unconstitutional incursion on the remedial power of the federal courts. We note, however, that this

---

3. Because the court concludes that the immediate termination provisions violate the separation of powers doctrine, it is unnecessary to address Plaintiffs' contention that the immediate termination provision is unconstitutional because it abrogates their right to equal protection of the laws.

conclusion is predicated on our interpretation of the termination provision as limiting federal jurisdiction over the non-federal aspects of the Consent Decrees rather than as making those aspects of the Decrees void. That is, it presupposes the first rather than the second reading of the provision; indeed, even the authorities on which the defendants rely all concern attempts to limit jurisdiction, and not attempts to destroy pre-existing judgments or decrees.

*Id.* at 170. As will be noted in the discussion below, *Benjamin,* answered each of plaintiffs' separation of powers arguments with the observation that serious constitutional problems are avoided "because [the PLRA] does not annul the underlying Decrees, but, instead, only changes the forum in which they can be enforced." *Id.* at 174.

One can have nothing but respect for the Court of Appeals for the Second Circuit and for the distinguished jurist-scholar who wrote the *Benjamin* opinion. Its construction of § 3626(b), however, is hard to square with either the language of that provision or Congress's unmistakable intent when enacting it. The words "immediate termination of prospective relief" seem clear and unambiguous. The prospective relief provisions of the decree are "immediately terminated." If that is the case, there is nothing left to be enforced in the state courts, and surely any state court in which relief was sought under the decree would so hold.

A principal purpose of the PLRA was to get the federal courts out of the business of running state prisons. Leaving decrees in place that contain detailed requirements governing state prisons runs counter to this purpose. To hold in addition that the federal courts, after imposing such requirements, impose the burden of enforcing them on the state courts would only compound the evil which Congress perceived.

I conclude, therefore, that § 3626(b) does not simply constrict the jurisdiction of the federal court to enforce the consent decree in the present case. If valid, it annuls that decree. That being the case, *Benjamin* must be read as a court of appeals decision that, by clear implication, supports plaintiffs' con-

tention that § 3626(b) violates separation of powers principles.

*B. Separation of Powers and Final Judgments:*

Notwithstanding the fact that the separation of powers doctrine is not expressly articulated in the Constitution, it is fundamentally rooted in constitutional jurisprudence. *See National Mut. Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 590–91, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949). The doctrine "is basic and vital" to the Constitution's scheme of government. *O'Donoghue v. United States,* 289 U.S. 516, 530, 53 S.Ct. 740, 77 L.Ed. 1356 (1933).

Article III of the Constitution allocates to the federal judiciary the power to rule on and decide cases. *See Plaut,* 514 U.S. at 218–20, 115 S.Ct. 1447. Preservation of this power serves "to safeguard litigants' right to have claims decided before judges who are free from potential domination by other branches of government." *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 848, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (citation and internal quotation marks omitted).

The Supreme Court has made it unmistakably clear that "a judgment conclusively resolves the case" and that "[b]y retroactively commanding the federal courts to reopen final judgments, Congress has violated this fundamental principle." *Plaut,* 514 U.S. at 219, 115 S.Ct. 1447. Defendants and the government seek to evade this categorical rule by arguing that a consent decree is not a final judgment because it is subject to judicial modification *Plaut's* reasoning requires that this argument be rejected.

Article III courts have been vested with the authority "to say what the law is" in particular cases and controversies. *See Id.* at 218–19, 115 S.Ct. 1447 (quoting *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)). This power is "not merely to rule on cases, but to decide them ... with an understanding, in short, that a judgment conclusively resolves the case because a judicial [p]ower is one to render dispositive judgments." *Id.* (internal quotations omitted).

█ "A consent decree is a final judgment that may be reopened only to the extent that equity requires." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 389, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). Such decrees may be modified and are subject to "ongoing exercises of judicial authority." *Id.* at 384, 112 S.Ct. 748. There are three circumstances permitting modification: (1) "when changed factual conditions make compliance with the decree substantially more onerous;" (2) "when a decree proves to be unworkable because of unforeseen obstacles;" or (3) "when enforcement of the decree without modification would be detrimental to the public interest." *Id.* When it was entered, the consent decree was subject to modification on these grounds. It was not subjected to termination, however, upon application of a defendant or intervenor if certain prescribed findings were absent.

█ Defendants concede that there is no practical difference between the finality of a consent decree and a litigated finding for separation of powers purposes. Furthermore, the *Plaut* court held that once a judgment is final, "a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable to that very case was something other than what the courts said it was." *Plaut,* 514 U.S. at 228, 115 S.Ct. 1447. Ultimately, "when an individual final judgment is legislatively rescinded for even the very best of reasons," it violates the separation of powers. *Id.*

Defendants and Intervenor argue, however, that consent decrees, like the one at issue in the present case, were never meant to represent the "last word of the judicial department," because the federal courts have the obligation to modify or terminate injunctive orders as the facts or law change. As such, Defendants and Intervenor contend that consent decrees cannot be considered *final judgments for separation of powers purposes.*

Certain courts of appeals which have addressed the issue have adopted this reasoning. *See, e.g., Gavin,* 122 F.3d at 1081. *Plaut* addressed a similar argument, namely,

that because *Fed.R .Civ.P.* 60(b) authorized courts to relieve parties from a final judgment for specified grounds, Congress could retroactively require relief from a final judgment on other grounds. The Court observed that "Rule 60(b), and the tradition that it embodies, would be relevant refutation of a claim that reopening a final judgment is always a denial of property without due process; but they are irrelevant to the claim that legislative instruction to reopen impinges upon the independent constitutional authority of the courts." *Plaut,* 514 U.S. at 234, 115 S.Ct. 1447.

Rejecting the contentions that the existence of Rule 60(b) justified Congress's imposing an additional requirement for reopening judgments the Court stated that:

> [t]he finality that a court can pronounce is no more than what the law in existence at the time of judgment will permit to pronounce. If the law then applicable says that the judgment may be reopened for certain reasons, that limitation is built into the judgment itself, and its finality is so conditioned. The present case, however, involves a judgment that Congress subjected to a reopening requirement which did not exist when the judgment was pronounced.

*Id.* And for that reason the Court invalidates the reopening provision which was the subject of *Plaut.* The same result must obtain in this case. The consent decree is a final judgment. The provision of the PLRA which requires the court to terminate the prospective relief set forth in that judgment was not a part of the law when the consent decree was entered into and its retroactive application violates separation of powers principles. *See Taylor,* 972 F.Supp. at 1249.

*C. Wheeling Bridge Exception:*

Courts which have upheld the termination provisions of the PLRA rely upon a so-called "*Wheeling Bridge* exception" to the rule that the separation of powers doctrine prevents Congress from requiring federal courts to reopen final judgments in private civil actions.

*Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855) ("*Wheeling Bridge*") arose after an earlier Supreme Court case which held that the defendant's bridge impeded navigation along the Ohio River and provided for injunctive relief requiring that the bridge be raised or removed. *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 54 U.S. (18 How.) 518 (1852). Subsequent to the Court's first decision in 1852, Congress passed a statute providing that the defendant's bridge was lawful. Relying on the original judgment, the State of Pennsylvania then sought to enjoin the bridge's reconstruction after it was destroyed in a storm. In *Wheeling Bridge*, the Court dissolved the initial injunction based on the new statute.

The Court recognized that the effect of the statute was to nullify the Court's earlier decision.

> [W]e agree, if the remedy in this case had been an action at law, and a judgment rendered in favor of the plaintiff for damages, the right to these would have passed beyond the reach of the power of congress. It would have depended, not upon the public right of the free navigation of the river, but upon the judgment of the court. The decree before us, so far as it respect [sic] the costs and adjudged, stands upon the same principles, and is unaffected by the subsequent law. But that part of the decree, directing the abatement of the obstruction, is executory, a continuing decree, which requires not only the removal of the bridge, but enjoins the defendants against any reconstruction or continuance. Now, whether it is a future existing or continuing obstruction depends upon the question whether or not it interferes with the right of navigation. If, in the mean time, since the decree, this right has been modified by the competent authority, so that the bridge is no longer an unlawful obstruction, it is quite plain the decree of the court cannot be enforced. There is no longer any interference with the enjoyment of the public right inconsistent with the law.

*Wheeling Bridge*, 59 U.S. (18 How.) at 431–32.

The Court differentiated between money damages and injunctions (the nature of the relief) and between public and private rights (the nature of the rights) in reaching its decision to permit Congress to reopen a final judgment. Courts passing upon the constitutionality of the PLRA's termination provision have used these distinctions to justify upholding these provisions on the basis of the *Wheeling Bridge* exception. For example, in *Benjamin* the court stated that the *Plaut* rule "may thus contain a *Wheeling Bridge* exception for legislation 'alter[ing] the prospective effect of injunctions entered by Article III courts.'" *Benjamin*, 124 F.3d at 171. The *Benjamin* court analogized a consent decree to an injunction and concluded that a consent decree "would therefore appear to fall within the possible *Wheeling Bridge* exception to the separation of powers principle articulates in *Plaut*." *Id.*

*Benjamin* characterized, as plausible, plaintiffs' argument that legislation that alters an executory judgment (granting injunctive relief) will be unconstitutional if it relates to a private right. However, *Benjamin's* unique construction of the termination provision allowed it to reject plaintiffs' argument: "Nonetheless [plaintiffs' argument] fails, at least if we read the statute as barring only prospective relief in federal courts, rather than an nullifying the Decrees themselves." *Id.* at 172.

Like *Benjamin, Plyler*, 100 F.3d at 365, held that the termination provision came within the *Wheeling Bridge* exception, distinguishing between money judgments (held to be immune to subsequent changes in the law) and injunctions (held not to be immune).

To determine whether an agreement negotiated between parties to a litigation and incorporated into a consent decree comes within the *Wheeling Bridge* exception, it is first necessary to compare the *Wheeling Bridge* injunction and the instant consent decree. The first *Wheeling Bridge* decision was, in effect, a negative commerce clause ruling. Congress had the unquestioned power to regulate passage on the Ohio River, a navigable stream. Failure of Congress to authorize obstructions of navigation led the Court to enjoin continued obstructions

which the bridge caused. Thereafter, in the exercise of its power, Congress authorized construction of a bridge which had the effect of impeding navigation on the river but facilitating ground transportation. The original injunction in the case was premised upon Congress's presumed intent to preserve unfettered navigation on the river. When Congress changed the law, the basis for injunctive relief disappeared. The original injunction was from the outset subject to the possibility that Congress would authorize a bridge, requiring that the injunction be vacated and preventing the issuance of a new one.

> But it is urged, that the act of congress cannot have the effect and operation to annul the judgment of the court already rendered, or the rights determined thereby in favor of the plaintiff. This, as a general proposition, is certainly not to be denied, especially as it respects adjudication upon the private rights of parties. When they have passed into judgment the right becomes absolute, and it is the duty of the court to enforce it.
>
> . . . . .
>
> But that part of the decree, directing the abatement of the obstruction, is executory, a continuing decree, which requires not only the removal of the bridge, but enjoins the defendants against any reconstruction or continuance. Now, whether it is a future existing or continuing obstruction depends upon the question whether or not it interferes with the right of navigation. If, in the mean time, since the decree, this right has been modified by the competent authority, so that the bridge is no longer an unlawful obstruction, it is quite plain that the decree of the court cannot be enforced. There is no longer any interference with the enjoyment of the public right inconsistent with law, no more than there would be where the plaintiff himself had consented to it, after the rendition of the decree.

59 U.S. (18 How.) at 431–32.

The consent decree in the present case presents a situation totally dissimilar from that presented in *Wheeling Bridge.* There the original relief was granted to the plaintiff

because the bridge violated the law as it then existed. Congress changed the law, as it had every right to do, and the bridge became permissible under the new law. In this sense "public rights" were resolved.

In the present case, Plaintiffs sought relief under the Constitution of the United States, which Congress has no power to change. To resolve the dispute, the parties entered into an agreement, the terms of which were incorporated into a final judgment. This judgment conferred rights upon the parties. Although the case dealt with Constitutional principles of public importance, the consent decree simply resolved the issues as between the parties. *Wheeling Bridge* provides no basis for legislative termination of these rights.

*Taylor, supra,* contains a well-reasoned analysis of the *Wheeling Bridge* exception to which little can be added here. The court concluded that "because the PLRA's termination provision (§ 3626(b)(2)) reopens final judgments and because it does not fall within the *Wheeling* exception, it is unconstitutional under separation of powers." *Taylor,* 972 F.Supp. at 1249. Both the rationale and the conclusion of *Taylor* are applicable here. The *Wheeling Bridge* exception does not save § 3626(b)(2).

### D. The Klein Rule:

Plaintiffs argue that the PLRA's immediate termination provision violates the separation of powers doctrine by prescribing a rule of decision without changing the underlying law. See *United States v. Klein,* 80 U.S. (13 Wall.) 128, 146–47, 20 L.Ed. 519 (1871). In that case, Klein, the administrator of the estate of Wilson, a noncombatant Confederate landowner, petitioned to recover proceeds of goods pursuant to a statute that permitted the recovery of such proceeds upon proof of loyalty to the federal government. Klein recovered in the Court of Claims on the basis of evidence that Wilson had received a presidential pardon. In an earlier opinion, the Supreme Court had held that such a pardon was sufficient proof of loyalty.

While Klein's case was pending on appeal in the Supreme Court, Congress enacted a statute which declared that a presidential

pardon was proof of *dis*loyalty and directed the dismissal of any pending recovery action brought on behalf of a pardon recipient. The Court declared the statute unconstitutional on separation of powers grounds because it prescribed a rule of decision in a pending case. *See Klein*, 80 U.S. (13 Wall.) at 147. In addition, the *Klein* court distinguished *Wheeling Bridge* as a case in which "the court was left to apply its ordinary rules to the new circumstances created by the act (whereas in *Klein*) no new circumstances have been created by legislation." *Id.*

Here, Plaintiffs argue that § 3626(b)(2) mandates a rule of decision in a pending case, in violation of the Supreme Court rule in *Klein*. The courts of appeals which have addressed the *Klein* argument have rejected it. The court of appeals of the First and Fourth Circuits ruled that the PLRA alters substantive law by limiting the power of federal courts to grant remedies in cases involving prison conditions. *Plyler*, 100 F.3d at 365; *Inmates*, 129 F.3d at 649. While a statute limiting the courts' jurisdiction might be deemed substantive law, Congress, by requiring modifications of a judgment entered when a court had undoubted jurisdiction, certainly prescribes a rule of decision in this case.

The Court of Appeals for the Eighth Circuit saved the PLRA from the *Klein* rule by limiting *Klein* to cases in which Congress "has 'left the court no adjudicatory function to perform.'" *Gavin*, 122 F.3d at 1089. *Klein*, however, was not so limited. The court had the power to deal with the issue of returns of property, but after a determination of the case, the court was required by statute to dismiss it.

*Benjamin*, acknowledges forthrightly the full implication of the *Klein* rule, that the separation of powers doctrine is violated when Congress prescribes a rule of decision for courts to follow without permitting courts to exercise their judicial powers independently. Under *Benjamin's* construction of the PLRA, § 3626(b)(2) does not conflict with *Klein* because

> [t]he underlying contract, in its time made into a judgment, is left untouched, but federal courts no longer have the jurisdic-

tion to enforce it. Since that contract/judgment, like any judgment of a court, cannot be affected directly by Congress, we have not read Congress as having attempted to do so. It follows that the Consent Decrees remain binding on the parties, although the jurisdiction available to them to enforce these binding agreements has been changed. And the parties are no more free to ignore the agreements they have made than they are to ignore any other agreement as to which no redress in federal courts is available.

*Benjamin*, 124 F.3d at 178.

In *Benjamin*, the court recognized that only its interpretation of the PLRA "avoids a serious *Klein* problem." *Id.* at 174. No other court of appeals has accepted Benjamin's construction of § 3626(b)(2). Each has construed the statute to require voiding consent decree provisions for prospective relief when certain conditions are met. This construction would appear to be correct. If so, Congress has prescribed a rule of decision, and the "serious *Klein* problem" alluded to in *Benjamin* exists. In addition to reopening a final judgment contrary to *Plaut*, § 3626(b)(2) prescribes a rule of decision contrary to *Klein*. This constitutes a violation of separation of power principles, and the provision cannot be given effect in this case.

### CONCLUSION

For the foregoing reasons, Defendants' motion to terminate the consent decree is denied. An appropriate order will be entered.