Randolph C. VAZQUEZ, et al., Plaintiffs,

v.

Timothy CARVER, individually and in his official capacity as Warden of Lehigh County Prison, et al., Defendants.

Civil No. 86–3020.

United States District Court,
E.D. Pennsylvania.

June 22, 1998.

*MEMORANDUM*

CAHN, Chief Judge.

In this class action regarding prison conditions, Defendants have filed a Motion to Declare the Consent Decree Terminated (Dkt.165), relying primarily on 18 U.S.C.A. § 3626(b)(2) (West 1985 & Supp.1998) (the "termination provision"), as amended by the Prison Litigation Reform Act of 1995, Pub.L. No. 104–134, 110 Stat. 1321–66 to 76 (1996). Plaintiffs argue, *inter alia,* that the termination provision is unconstitutional, and propose modification of the Consent Decree as an alternative to its termination. The government has intervened pursuant to 28 U.S.C.A. § 2403(a) (West 1994). After briefing and oral argument, and for the reasons that follow, the court holds that the termination provision is constitutional, and will grant the Motion.

## I. BACKGROUND [1]

The parties are familiar with the history of this case. In addition, much of the relevant background is set forth in detail in three prior opinions by Judge Huyett,[2] *see Vazquez v. Carver,* Civ. A. No. 86–3020, 1987 WL 14847 (E.D.Pa. Jul.27, 1987) ("*Vazquez I* "), *aff'd,* 845 F.2d 1019 (3d Cir.1988); *Vazquez v. Carver,* 729 F.Supp. 1063 (E.D.Pa.1989) ("*Vazquez II* "); *Vazquez v. Carver,* Civ. A. No. 86–3020, 1989 WL 147591 (E.D.Pa. Dec.5, 1989) ("*Vazquez III* "). A brief summary of events, however, is appropriate.

This case began in 1986, when Plaintiffs, on behalf of all present and future inmates of the (since-demolished) Lehigh County Prison ("Old LCP"), filed suit pursuant to 42 U.S.C. § 1983, alleging that the conditions of their confinement violated the Eighth and Fourteenth Amendments. Plaintiffs' primary goal was to eliminate overcrowding and related problems at Old LCP. Plaintiffs sought injunctive relief in the form of, *inter alia,* a population cap at Old LCP. Although the conditions at Old LCP troubled Judge Huyett, he found no constitutional violation. *See Vazquez I,* 1987 WL 14847, at *20. Judge Huyett therefore denied injunctive relief, although he suggested that a more fully-developed record might show that Plaintiffs were entitled to such relief. *See id.* at *21.

Over two years later, Plaintiffs renewed their motion for injunctive relief. Finding that conditions at Old LCP had worsened and now violated the Eighth and Fourteenth Amendments, Judge Huyett issued an injunction that capped the population at Old LCP and gave Defendants forty-five days to comply. *See Vazquez II,* 729 F.Supp. at 1065, 1069–70. Judge Huyett held that the injunction would "cure the constitutional violations which presently exist at [Old] LCP." *Id.* at 1070. The injunction was to remain in

1. In addition to the facts set forth in the Background section, for the purpose of deciding the Motion to Declare the Consent Decree Terminated, the court adopts Plaintiffs' Proposed Stipulations of Fact (the "Proposed Stipulations"). (*See* Pls.' Supp. Br. Ex. A .) None of the Proposed Stipulations, however, are outcome-determinative with respect to the Motion. In this Memorandum, the court cites or repeats some Proposed Stipulations to the extent they are relevant to the court's analysis.

2. Judge Huyett presided over this case until it was reassigned to this court on June 9, 1997. The court was deeply saddened that Judge Huyett, a distinguished jurist who presided in this district for twenty-seven years, recently passed away.

effect until the court held a final hearing on the merits, or approved the consent decree (the "Consent Decree") that the parties had recently submitted to the court, whichever came first. *See id.* at 1071. On May 4, 1990, the court approved the Consent Decree (Dkt.150), effectively ending the injunction and settling the litigation.

The twenty-nine page Consent Decree addresses many aspects of inmate life at Old LCP, including population, classification, admission procedures, programs, lighting, heating, ventilation, sanitation, medical care, petitioning rights, law library facilities, mail services, exercise privileges, and jobs. Certain provisions of the Consent Decree are particularly relevant to the current proceeding. Paragraph 1 limits the combined number of inmates and pretrial detainees at Old LCP to 242. Paragraph 73 requires Defendant Lehigh County to continue with plans to construct a new prison ("New LCP") to replace Old LCP, and sets a target date of April, 1992, for the completion and occupation of Phase I of New LCP ("Phase I").

Paragraphs 74–77 establish a monitoring period during which, *inter alia:* (1) Defendant Lehigh County must periodically update Plaintiffs' counsel on the progress of Phase I construction; (2) Defendant Lehigh County must submit to Plaintiffs' counsel copies of state inspection reports concerning Old LCP, and copies of agreements for the provision of Plaintiffs' health care; and (3) Plaintiffs' counsel have a right of access to Old LCP and may periodically meet with inmates there. Under paragraph 79, the monitoring period terminates one year after Phase I is completed and substantially occupied. Paragraph 79 also gives Defendants the right to seek modification of the non-monitoring provisions of the Consent Decree after Phase I is completed and substantially occupied.

The Consent Decree does not expressly provide that it is subject to the continuing supervisory jurisdiction of the court. Paragraph 78, however, provides that, "[i]nthe event of one or more alleged violations of this Consent Decree, counsel for plaintiffs shall have the right to seek enforcement and any and all appropriate relief from the Court." [3]

The Consent Decree contains no language regarding how long its provisions, with the exception of those relating to the monitoring period, remain in effect. A Notice of Proposed Settlement (the "Notice") prepared by Plaintiffs' counsel, however, which was posted at Old LCP and published in the Allentown *Morning Call* before the court approved the Consent Decree, contains a "Summary of Proposed Consent Decree" that provides, in relevant part: "20. *Termination.* The Consent Decree shall terminate one (1) year after completion and occupancy of the first phase of the new prison." (Mot. to Decl. Consent Decree Terminated Ex. B.)

Phase I was completed and occupied in April, 1992, and Old LCP ultimately was demolished. The total cost of constructing New LCP, which can accommodate over 1,000 inmates, was over fifty million dollars.

Since the opening of Phase I, the court has never had to order Defendants to comply with the Consent Decree. The court intervened to address Defendants' compliance with the Consent Decree in only one instance. In August, 1995, the court forwarded to Plaintiffs' counsel a letter from New LCP inmate Donald Jones, a copy of which the court had received in April, 1995. Jones complained about the conditions at New LCP. The court asked Plaintiffs' counsel what action, if any, they had taken in response to Jones's letter. Although the monitoring period had expired by the time Plaintiffs' counsel received Jones's letter, Plaintiffs' counsel visited New LCP and investigated Jones's complaints with the cooperation of Defendants. No further action by the court was required.

On June 30, 1996, Defendants filed the instant Motion to Declare the Consent Decree Terminated (Dkt.165). The parties have had ample opportunity to make their argu-

3. After executing the Consent Decree, the parties established a grievance procedure (Dkt.152), pursuant to which most claimed violations of the Consent Decree would be first brought before, and investigated by, an appointed monitor. The grievance procedure, which expired on May 31, 1993, limited the court's jurisdiction over the Consent Decree insofar as inmates generally had to first exhaust their remedies under the procedure before filing a complaint with the court.

ments for or against the Motion. Plaintiffs filed a response (Dkt.172), and Defendants filed a reply (Dkt.175). After this case was reassigned to this court, Plaintiffs and Defendants filed letter briefs (Dkt.198, 199), and Plaintiffs filed a reply letter brief (Dkt.200). Defendants and Plaintiffs then filed supplemental briefs (Dkt.194, 201), and Defendants filed a reply letter brief (Dkt.202). The government intervened on April 13, 1998, pursuant to 28 U.S.C.A. § 2403(a) (West 1994), and filed a memorandum addressing the termination provision's constitutionality (Dkt.203). The court heard oral argument on May 1, 1998. After oral argument, Plaintiffs filed two supplemental submissions (Dkt.204, 205), and the government filed a supplemental memorandum (Dkt.206).

## II. DISCUSSION

Defendants, who seek the immediate termination of the Consent Decree, advance four arguments. First, Defendants argue that the Consent Decree terminated by its own terms at the end of the monitoring period. Second, Defendants argue that the court should terminate the Consent Decree because Defendants have satisfied the Consent Decree. Third, Defendants argue that the court should terminate the Consent Decree pursuant to 18 U.S.C.A. § 3626 (West 1985 & Supp.1998). Fourth, Defendants argue that the court should terminate the Consent Decree pursuant to the standard set forth in *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 383–92, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). As explained below, the court rejects Defendants' first and second arguments. The court agrees, however, with Defendants' third argument and will grant the Motion on that basis.

### A. Self–Termination of the Consent Decree

Defendants' first argument is that the Consent Decree terminated by its own terms at the end of the monitoring period, that is, one year after Phase I's completion.[4] In support of this argument, Defendants cite the Notice, which purports to summarize the Consent Decree and provides that the Consent Decree terminates one year after Phase I's completion. Defendants emphasize that Plaintiffs' counsel drafted the Notice.[5] According to Defendants, the termination of the Consent Decree was self-executing.

This argument lacks merit. The Notice is irrelevant to the court's analysis,[6] because the court "discern[s] the scope of a consent decree by examining the language within its four corners." *Harris v. City of Philadelphia,* 137 F.3d 209, 212 (3d Cir. 1998). Here, the four corners of the Consent Decree contain no language regarding how long its provisions, with the exception of those relating to the monitoring period, remain in effect. In addition, the fact that Defendants did not object when Plaintiffs' counsel investigated Jones's allegations of Consent Decree violations in 1995 belies Defendants' claim that the Consent Decree self-terminated two years earlier. Plaintiffs' claim that neither party intended for the Consent Decree to terminate at the end of the monitoring period, (*see* Proposed Stipulations ¶ 8), although relevant, is not necessary to the court's analysis.

### B. Satisfaction of the Consent Decree

Defendants' second argument is that, pursuant to Fed.R.Civ.P. 60(b)(5),[7] the court

4. Defendants claim that the monitoring period expired in April, 1993. Plaintiffs, however, claim that the monitoring period expired on May 31, 1993. (*See* Proposed Stipulations ¶¶ 7, 11.) The exact date of the monitoring period's expiration is irrelevant to the court's analysis.

5. Plaintiffs' counsel contend that they made a drafting error, and that the Notice language cited by Defendants is inaccurate.

6. The court therefore does not decide whether Plaintiffs erred when they drafted the Notice language cited by Defendants.

7. Rule 60(b)(5) authorizes a court to relieve a party from a final judgment if "the judgment has been satisfied ... or it is no longer equitable that the judgment should have prospective application." The court notes that, although the Consent Decree may be a "final judgment" for purposes of appeal or Rule 60(b)(5), this fact does not contradict the finding later in this Memorandum that the Consent Decree is not the court's "last word" for separation-of-powers purposes. *See Gavin v. Branstad,* 122 F.3d 1081, 1087 (8th Cir.1997) ("[A] consent decree is not the 'last word' of the courts in the case, even after the

should terminate the Consent Decree because the construction and occupation of New LCP, and the demolition of Old LCP, have satisfied the Consent Decree. Defendants suggest that the Consent Decree governs conditions at only Old LCP, and that the plaintiff class consists of present and future inmates of only Old LCP. Defendants further suggest that, even if the Consent Decree and the plaintiff class relate to New LCP, the Consent Decree has been satisfied because the primary focus of the original litigation, overcrowding, is not a problem at New LCP, which can accommodate well over the 242 inmates that the Consent Decree fixes as the maximum inmate population at Old LCP.

Rule 60(b)(5) does not justify terminating the Consent Decree. The Consent Decree and the plaintiff class do not relate to only Old LCP. The fact that the Consent Decree provides for monitoring through the first year after Phase I is completed and substantially occupied, and gives Defendants the right to seek modification of the non-monitoring provisions after Phase I is completed and substantially occupied, suggests that the parties intended the Consent Decree to remain in effect after the plaintiff class had moved to New LCP, and Old LCP had been vacated, if not demolished. Thus, the court finds that the Consent Decree governs conditions at New LCP, and the plaintiff class includes present and future inmates of New LCP.

More important, although the primary focus of the original litigation was overcrowding, the construction of a prison with more cells such as New LCP, and the demolition of Old LCP, do not alone satisfy and warrant termination of a Consent Decree that addresses many aspects of inmate life unrelated to overcrowding, such as classification, admission procedures, programs, medical care, and petitioning rights. The Consent Decree clearly has as much to do with prison administration as with the prison itself. As Plaintiffs correctly note, "the Consent Decree addresses more than bricks and mortar." (Pls.' 7/30/97 Reply Letter Br. at 3.) [8]

## C. The Termination Provision

Defendants' third argument is that the court should terminate the Consent Decree pursuant to 18 U.S.C.A. § 3626 (West 1985 & Supp.1998), as amended by the Prison Litigation Reform Act of 1995 (the "PLRA"), Pub.L. No. 104–134, 110 Stat. 1321–66 to 76 (1996). Section 802(a) of the PLRA amended 18 U.S.C.A. § 3626 to read, in relevant part:

> **(b) Termination of Relief.-**
>
> **(2) Immediate termination of prospective relief.-**In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.
>
> **(3) Limitation.-**Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing [9] violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.
>
> * * * * * *
>
> **(g) Definitions.-**As used in this section-
>
> (1) the term "consent decree" means any relief entered by the court that is based in whole or in part upon the consent

decree itself has become final for purposes of appeal."), *petition for cert. filed*,—U.S.L.W.— (U.S. Jan. 5, 1998) (No. 97–7420).

8. To account for the substantial improvement in physical living conditions, Rule 60(b)(5) might justify modifying the Consent Decree. The court does not address the issue of modification, however, because the court will terminate the Consent Decree on other grounds.

9. Under the PLRA, this section read "current *or* ongoing." (Emphasis added.) Effective November 26, 1997, Congress amended this section to read "current *and* ongoing." *See* Pub.L. No. 105–119, § 123(a)(2), 111 Stat. 2440, 2470 (1997) (emphasis added). The amendment applies to this case. *See id.* at § 123(b).

or acquiescence of the parties but does not include private settlements;

* * * * * *

(7) the term "prospective relief" means all relief other than compensatory monetary damages; [and]

* * * * * *

(9) the term "relief" means all relief in any form that may be granted or approved by the court, and includes consent decrees but does not include private settlement agreements.

Section 802(b) of the PLRA provides that "Section 3626 of title 18, United States Code, as amended by this section, shall apply with respect to all prospective relief whether such relief was originally granted or approved before, on, or after the date of the enactment of this title [April 26, 1996]."

Defendants argue that they are entitled to the immediate termination of the Consent Decree pursuant to the termination provision, § 3626(b)(2). In support of this argument, Defendants claim that: (1) the termination provision applies to prospective relief; (2) pursuant to § 3626(g), "prospective relief" includes consent decrees in their entirety; (3) the court approved the Consent Decree without making the findings described in the termination provision; and (4) the record before the court contains no evidence of a current and ongoing violation of a federal right at New LCP, as required by § 3626(b)(3) to prevent the termination of the Consent Decree.

### 1. Applicability of the Termination Provision to the Consent Decree and the Plaintiff Class

Plaintiffs argue that the termination provision does not apply to the Consent Decree. Plaintiffs concede that the termination provision applies to prospective relief, but contend that the Consent Decree does not confer prospective relief. Instead, according to Plaintiffs, the Consent Decree "confer[s] benefits which have prospective effect." (Pls.' Resp. Opp'n. Mot. at 9.) Plaintiffs reason that, because Defendants complied with the Consent Decree even before the court approved the Consent Decree, (*see* Proposed Stipulations ¶¶ 16–26, 28–34, 37–38), its provisions do not confer relief *per se*, but instead confer the benefits of Defendants' compliance, though the effect of the benefits may operate *in futuro*. As a fallback, Plaintiffs argue that, even if some of the Consent Decree's provisions confer prospective relief, then the termination provision applies only to those provisions, and not to the rest of the Consent Decree. (*See* Pls.' Supp. Br. at 20.)

The plain language of § 3626(g)(7) and (9) refutes Plaintiffs' arguments. As used in the termination provision, " 'prospective relief' means all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). "Relief," in turn, "includes consent decrees." *Id.* at § 3626(g)(9). Consent decrees are not damages. Therefore, under a strict construction of the statute, and as Defendants correctly note, "prospective relief" includes consent decrees themselves.

The court notes that consent decrees themselves are not commonly referred to as relief; rather, consent decrees generally are viewed as a mechanism pursuant to which relief is granted. *See Inmates of Suffolk County Jail v. Rouse,* 129 F.3d 649, 654–55 (1st Cir.1997) ("The PLRA's equation of 'consent decree' and 'relief' contradicts conventional understandings and ... requires that commonplace legal terms be used in curious ways."), *petition for cert. filed,* — U.S. ——, 118 S.Ct. 2366, 141 L.Ed.2d 735 (1998) (No. 97–1278); *Benjamin v. Jacobson,* 124 F.3d 162, 167–68 (2d Cir.1997) (Calabresi, J.) (same), *reh'g held en banc* Feb. 25, 1998. This observation, however, does not warrant ignoring the unambiguous language of § 3626(g)(7) and (9). *See Inmates,* 129 F.3d at 655 ("[T]he PLRA's legislative history persuades us to embrace the unusual."). Although in *Benjamin* the court of appeals interpreted § 3626's definitions as incorporating the generally-accepted notion of "relief," *see* 124 F.3d at 168 ("[T]he statutory definition of relief ... should preferably be read to mean that it includes remedies arising out of or issued pursuant to consent decrees [as opposed to the consent decrees themselves.]"), Plaintiffs themselves dismiss this alternative interpretation as "manipulation of the clear language of the PLRA,"

(*see* Pls.' Supp. Br. at 12).[10] Accordingly, the court finds that the termination provision applies to the Consent Decree in its entirety.

Plaintiffs also argue that the termination provision does not apply to the members of the plaintiff class who are not "prisoners" within the meaning of the PLRA. (*See id.* at 28–29.) Citing 28 U.S.C.A. § 1915(h) (West 1994 & Supp.1998),[11] Plaintiffs reason that the termination provision does not apply to those members of the plaintiff class who are

> people neither convicted nor charged with any crime, but who are incarcerated as a result of civil proceedings, such as nonpayment of support and immigrants who entered the United States illegally and who seek political asylum.

(Pls.' Supp. Br. at 29 (*quoting* Proposed Stipulations ¶ 1).)

Plaintiffs' reliance on § 1915(h) is misplaced. By its terms, the definition set forth in § 1915(h) applies only to § 1915, which concerns proceedings *in forma pauperis.* More important, however, is the fact that the termination provision does not apply only to prisoners; it applies "[i]n any civil action with respect to prison conditions." 18 U.S.C. § 3626(b)(2). This case is a civil action with respect to prison conditions, and therefore the termination provision applies as to all Plaintiffs. That some members of the plaintiff class may not be "prisoners" within the meaning of § 1915(h) is irrelevant. Accordingly, the court finds that the termination provision applies to all members of the plaintiff class.

### 2. Constitutionality of the Termination Provision

Plaintiffs next argue that even if the termination provision applies, the termination provision is unconstitutional because: it violates separation of powers; it denies due process; and it denies equal protection. As explained below, however, the court finds that the termination provision withstands each of these constitutional attacks.

Plaintiffs argue that the termination provision violates separation of powers in two ways. Citing *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 218–19, 227, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), Plaintiffs claim that the termination provision requires Article III courts to reopen final judgments, because consent decrees are final judgments for separation-of-powers purposes. In addition, citing *United States v. Klein,* 13 Wall. 128, 80 U.S. 128, 146–47, 20 L.Ed. 519 (1871), Plaintiffs claim that the termination provision prescribes a rule of decision, and thereby appropriates the adjudicatory function of the federal courts.[12]

Plaintiffs argue that the termination provision denies due process guaranteed by the Fifth Amendment in two ways. First, Plaintiffs claim that, because consent decrees are final judgments, Plaintiffs have vested property rights in the benefits conferred by the Consent Decree, and the termination provision destroys such vested rights without due process by requiring the termination of the Consent Decree. (*See* Pls.' Resp. Opp'n. Mot. at 17–22.) Second, Plaintiffs claim that the termination provision unconstitutionally impairs Plaintiffs' rights under a contract (the Consent Decree), because the statute fails the rational-basis test, in that the application of the statute to pending cases does not serve the PLRA's purpose of minimizing frivolous prisoner lawsuits. (*See id.* at 22–27.)[13]

10. Plaintiffs suggest that, without the alternative interpretation of § 3626's definitions, the termination provision violates separation of powers. (*See* Pls.' Supp. Br. at 12.) As explained later in this Memorandum, however, the court finds that the termination provision does not violate separation of powers.

11. Section 1915(h) provides:

> As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

12. Although Plaintiffs do not make this claim in their briefs, they did at oral argument, and therefore the court will address the claim.

13. Plaintiffs characterize this claim as a Contracts Clause claim. (*See* Pls.' Resp. Opp'n. Mot. at 22.) As the government correctly notes, however, the Contracts Clause applies only to states. (*See* U.S. Mem. at 18 n. 13.) Therefore, the court

Plaintiffs argue that the termination provision denies equal protection guaranteed by the equal-protection component of the Fifth Amendment's Due Process Clause. Plaintiffs raise this challenge in a footnote, (*see* Pls.' Supp. Br. at 5 n. 6), and provide no supporting argument beyond asserting that the termination provision "impermissibly targets a particular class of citizens, prisoners, and denies them remedies previously afforded under established consent decrees." (*Id.*)

The Third Circuit Court of Appeals has not addressed the constitutionality of the termination provision to date. Seven other courts of appeals, however, have addressed the issue. In each of these cases, the party attacking the termination provision made some or all of the arguments relied on by Plaintiffs here. All of the courts of appeals except one rejected these arguments and upheld the termination provision. *Compare Hadix v. Johnson,* 133 F.3d 940, 942–43 & n. 3 (6th Cir.1998) (finding no separation-of-powers violation under *Plaut* or *Klein,* and suggesting in *dicta* that there is no denial of due process on vested-rights theory, and no denial of equal protection), *petition for cert. filed,* — U.S.L.W.—(U.S. Apr. 13, 1998) (No. 97–1693); *Dougan v. Singletary,* 129 F.3d 1424, 1426–27 (11th Cir.1997) (finding no separation-of-powers violation under *Plaut,* no denial of due process on vested-rights theory, and no denial of equal protection), *petition for cert. filed,*—U.S.L.W.—(U.S. Mar. 2, 1998) (No. 97–8120); *Inmates,* 129 F.3d at 657–61 (finding no separation-of-powers violation under *Plaut* or *Klein,* no denial of due process on vested-rights or contract-rights theories, and no denial of equal protection); *Benjamin,* 124 F.3d at 173–76 (same);[14] *Gavin v. Branstad,* 122 F.3d 1081, 1087, 1089–92 (8th Cir.1997) (same); *Plyler v. Moore,* 100 F.3d 365, 371–75 (4th Cir.1996) (finding no separation-of-powers violation under *Plaut* or *Klein,* no denial of due process on vested-rights theory, and no denial of equal protection), *cert. denied,* — U.S. —, 117 S.Ct. 2460, 138 L.Ed.2d 217 (1997); *with Taylor v. United States,* 143 F.3d 1178, 1183–85 (9th Cir.1998) (finding separation-of-powers violation under *Plaut* and *Klein* ).

The two district courts in this circuit that have addressed the constitutionality of the termination provision have reached different conclusions. *Compare Denike v. Fauver,* 3 F.Supp.2d 540, — (D.N.J.1998) (Debevoise, S.J.) (finding separation-of-powers violation under *Plaut* and *Klein;* denying motion to terminate consent decree), *with Imprisoned Citizens Union v. Shapp,* 11 F.Supp.2d 586, 597, 600, 601, 603, 610 (E.D.Pa.1998) (DuBois, J.) (finding no separation-of-powers violation under *Plaut* or *Klein,* no denial of due process on vested-rights or contract-rights theories, and no denial of equal protection; terminating consent decree), *mot. for recons. denied,* May 29, 1998.

After careful consideration of the parties' arguments and the relevant case law, the court holds that the termination provision is constitutional primarily for the reasons set forth in *Imprisoned Citizens.* Judge DuBois's analysis and conclusions on the constitutionality of the termination provision, *see id.,* 11 F.Supp.2d at 595–603, need little embellishment, and the court adopts them as if they were fully set forth herein. The court therefore only summarizes the main reasons behind its decision to reject each constitutional challenge, supplementing Judge Dubois's reasoning where appropriate.

The termination provision does not violate separation of powers. With respect to Plaintiffs' *Plaut* argument, the court finds that the termination provision does not re-

will construe the claim as a Fifth Amendment claim.

14. Although the court of appeals in *Benjamin* upheld the termination provision, the court based its holding on a construction of the provision as terminating federal courts' jurisdiction over non-federal aspects of consent decrees, rather than terminating the decrees themselves. *See* 124 F.3d at 166–68, 175. Other courts of appeals have rejected this construction. *See, e.g., Taylor v. United States,* 143 F.3d at 1180 (9th Cir.1998) ("[T]he statute might be read to avoid legislative termination of past consent decrees.... The legislative history, however, indicates otherwise.") (citation omitted).

open final judgments, because consent decrees are not final judgments for separation-of-powers purposes. *See Rufo,* 502 U.S. at 391, 112 S.Ct. 748, 116 L.Ed.2d 867 ("[A] consent decree is a final judgment *that may be reopened* only to the extent that equity requires.") (emphasis added); *Imprisoned Citizens,* 11 F.Supp.2d at 596 ("A consent decree simply is not the 'last word' of a court."); *see also supra* note 7.

With respect to Plaintiffs' *Klein* argument, the court finds that the termination provision does not prescribe a rule of decision, because in light of § 3626(b)(3), "the Court is able to apply the provisions of the [termination provision] to the facts presented and decide what relief, *if any,* is appropriate." *Imprisoned Citizens,* 11 F.Supp.2d at 600 (emphasis added). In other words, relief pursuant to § 3626(b)(2) is not guaranteed, and thus the federal courts retain their adjudicatory function. Although the Ninth Circuit Court of Appeals dismissed the "saving provision" (§ 3626(b)(3)) as "illusory," *Taylor,* 143 F.3d at 591–92, this characterization is erroneous, as evidenced by the actions of a court in this circuit, *see Carty v. Farrelly,* 957 F.Supp. 727, 734 (D.Vi.1997) (Brotman, J., sitting by designation) (finding that consent decree "comports with the requirements of [§ 3626(b)(3) ] and continues to bind all parties to its terms").

The termination provision does not deny due process on either a vested-rights or contract-rights theory. Given that "the vested rights doctrine is really only the due process analogue of the separation-of-powers doctrine that prevents Congress from reopening final judgments of Article III courts," *Gavin,* 122 F.3d at 1091, it follows that, as consent decrees are not final judgments for separation-of-powers purposes, neither are they final judgments for due-process purposes. *See Imprisoned Citizens,* 11 F.Supp.2d at 600. Thus, Plaintiffs have no vested property rights in the benefits conferred by the Consent Decree. In addition, assuming *arguendo* that Plaintiffs had vested property rights, the termination provision does not deprive them of such rights without due process. As found above, the termination provision does not guarantee relief; the court grants relief, if at all, only after the party opposing termination has had an opportunity to establish that, pursuant to § 3626(b)(3), termination is not warranted.

With respect to Plaintiffs' contract-rights argument, even if the court were to conclude that a consent decree is a pure contract, which it is not,[15] the application of the termination provision to pending cases pursuant to PLRA § 802(b) is neither arbitrary nor irrational. Plaintiffs fail to recognize that the PLRA's purpose, in addition to minimizing frivolous prisoner lawsuits, is "to get the federal courts out of the business of running state prisons." *Denike,* 3 F.Supp.2d 540, 544. The termination provision clearly is a rational means of achieving this legitimate aim. Therefore, the termination provision passes muster under the due-process equivalent of the rational-basis test, and "does not unconstitutionally impair [P]laintiffs' contract rights." *Imprisoned Citizens,* 11 F.Supp.2d at 601.

The termination provision does not deny equal protection. "Prisoners are not a suspect class." *Abdul-Akbar v. Department of Corrections,* 910 F.Supp. 986, 1004 (D.Del.1995), *aff'd,* 111 F.3d 125 (3d Cir.1997), *cert. denied,*— U.S. —, 118 S.Ct. 144, 139 L.Ed.2d 91 (1997). In addition, the termination provision does not burden Plaintiffs' fundamental right of access to the courts; "it simply limits the form and type of relief inmates may be awarded." *Imprisoned Citizens,* 11 F.Supp.2d at 602. Therefore, the court applies the rational-basis test. *See Inmates,* 129 F.3d at 660 ("A statute that neither abridges a fundamental right nor operates against a suspect class receives rational basis review when it is challenged under the Equal Protection Clause."). The termination provision "amply satisfies

15. Although "consent decrees have the attributes of contracts," *Harris,* 137 F.3d at 212, they are "a hybrid of a judgment and a contract," *Benjamin,* 124 F.3d at 178 n. 22.

the rational basis test" because, as the court found in its analysis of Plaintiffs' contract-rights argument, *supra,* the provision "is a perfectly rational means" of achieving "at least one legitimate goal: [limiting] federal court oversight of state prisons." *Imprisoned Citizens,* 11 F.Supp.2d 586, 603.

### 3. Effect of the Termination Provision on This Case

Having found that the termination provision is applicable and constitutional, the court must determine what effect, if any, it has on the Consent Decree. As a threshold matter, the court finds that Judge Huyett approved the Consent Decree without making the findings described in the termination provision. Approximately five months before Judge Huyett approved the Consent Decree, he found that conditions at Old LCP violated Plaintiffs' constitutional rights. *See Vazquez III,* 1989 WL 147591, at *1 ("Conditions at LCP are substantially the same as existed on October 5, 1989.") (referring to *Vazquez II,* 729 F.Supp. at 1070 ("[C]onstitutional violations ... presently exist at [Old] LCP.")). Even if this finding applies at the time he approved the Consent Decree, however, it is clear that Judge Huyett did not also find, at that time, that prospective relief (which includes the Consent Decree):

> is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C.A. § 3626(b)(2) (West 1985 & Supp. 1998).

Thus, pursuant to the termination provision, Defendants are entitled to the immediate termination of the Consent Decree, unless the court finds that, based on the record, prospective relief (which includes the Consent Decree):

> remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and ... is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C.A. § 3626(b)(3) (West 1985 & Supp. 1998).

The record before the court contains no evidence of a current and ongoing violation of a federal right at New LCP. The court notes that the Proposed Stipulations contain no allegation of a current and ongoing violation of the Consent Decree, let alone a violation of a federal right. Although Plaintiffs suggested at oral argument that further investigation might uncover a violation of the Consent Decree, they conceded that such a violation would fall short of implicating Plaintiffs' federal rights. Therefore, the court finds that it cannot make the findings described in § 3626(b)(3).

Plaintiffs warn that, if the court terminates the Consent Decree, Defendants "might rescind some or all of the policies and procedures previously put in effect under the Consent Decree." (Proposed Stipulations ¶ 27.) This statement, although true, does not affect the operation of § 3626, which contains no requirement that Defendants promise to maintain the status quo if the court terminates the Consent Decree. Moreover, should Plaintiffs' fears be realized, Plaintiffs may commence a new action to address any post-termination violation of their federal rights at New LCP. *See Inmates,* 129 F.3d at 662.

Accordingly, the court will grant Defendants' Motion and terminate the Consent Decree, effective immediately.[16] The court emphasizes that it will terminate the Consent Decree, as opposed to vacating it. *See Inmates,* 129 F.3d at 662; *Imprisoned Citizens,* 11 F.Supp.2d 586, 609–10.

## III. CONCLUSION

For the reasons described above, the court finds that the termination provision is constitutional. The court further finds that Judge Huyett approved the Consent Decree without making the findings described in the termi-

16. The court does not address Defendants' argument that the court should terminate the Consent Decree pursuant to the pre-PLRA *Rufo* standard, and Plaintiffs' argument that application of the *Rufo* standard warrants only modification of the Consent Decree, because these arguments are mooted by the court's termination of the Consent Decree pursuant to the termination provision.

nation provision, and that the record before the court contains no evidence of a current and ongoing violation of a federal right at New LCP. Accordingly, the court finds that Defendants are entitled to the immediate termination of the Consent Decree, and therefore the court will grant the Motion.